WELSH *et al. vs.* LEWIS & SON *et al.*

1. That a mortgage on personalty was attested only by a brother-in-law of the mortgagee, who was a notary, does not render it illegal. or its record bad.

   (a.) This case differs from that in 46 *Ga.*, 253. The rule as to an attorney rests on a special statute (Code, §408), and will not be extended by implication.

2. A mortgage began "$510. Montezuma, Macon county, Ga." Then followed the promissory note, after which came the following words: "Now, in consideration of the above advance of said sum of money, and to secure * * * * I mortgage, sell and convey all my entire stock merchandise now on hand, and hereafter to be received, contained in my brick store, west side of Dooley street, between Hill & Shumate and Vinson & Jarnagin," etc.

*Held*, that the whole paper, when construed together, means the goods in the brick store of the mortgagor in Montezuma, Macon county, Ga., on the street named, and between two other stores named. It included all the merchandise in that store and to be in it to supply the place of old goods sold; and the description was sufficient.

(*a*.) Besides the mortgage was recorded in Macon county, and it was proved that the only store the mortgagor had was that on the street and in the place named, in the town of Montezuma.

3   Where an attachment was levied on perishable property on which there was a mortgage, and it became necessary to sell the property in order to save it, and the same was done under order from the ordinary for that purpose, the sale was not encumbered with the lien of the mortgage.

4. Where a mortgage on perishable property sold under an attachment was foreclosed before the money raised had been distributed, it was in time to claim the fund under a money rule. Even if it had not been foreclosed, as the whole property was sold, it would have been entitled to claim the fund. Wherever perishable property is sold to preserve it, the sale will free the property from the lien of an unforeclosed mortgage, and the liens of all parties on the property will attach to the money produced by the sale.

October 2, 1883.

Mortgage. Witness. Liens. Before Judge Fort. Macon Superior Court. May Adjourned Term, 1883.

On December 27, 1881, R. L. Massey gave his note to John F. Lewis & Son for $510.20, due January 24, 1882, and on the day he gave the note he executed and delivered to Lewis & Son, for the purpose of securing the payment of the same, a mortgage on the following described property, viz: "All of my entire stock merchandise now on hand and hereafter to be received, contained in my brick store, west side of Dooly street, between Hill & Shumate and Vinson & Jarnigan." This mortgage was headed "$510.00, Montezuma, Macon county, Ga.;" was executed in the presence of O. C. Cheeves, a notary public, a brother-in-law of E. B. Lewis, who was a member of the firm of Lewis & Son, and was recorded on January 3, 1882, in Macon county. On December 3, 1881, before the note was due, Lewis & Son sued out an attachment

against Massey for the purpose of collecting the debt, on the ground that Massey was fraudulently disposing of his property. The sheriff, on the same day, levied the attachment on a stock of goods in the town of Montezuma, consisting of whiskies, brandies, wines, tobaccos, cigars, canned goods, bar fixtures, show cases, etc., as the property of Massey, and on the 19th, 20th, and 21st days of January, 1882, by virtue of his levy under this attachment and an order to sell, granted by the ordinary under section 3648 of the Code, sold the goods for $599.63. No notice was given by any one at the sale that the goods were sold free from the mortgage lien. Both Massey and E. B. Lewis, a member of the firm of John F. Lewis & Son, were present at the sale, but had no agreement that the goods should be sold free from the mortgage lien. They had no conversation on the subject, but each of them thought that the effect of the sale would be to free the goods from the lien of the mortgage. The goods sold for their full value and were purchased by various persons. Massey was insolvent at the time he gave the note and mortgage, and at the time of the sale and since. He had but one stock of goods—that sold, and but one place of business—the store in Montezuma where said goods were. There was no other property subject to the mortgage. The mortgage was foreclosed on January 24, 1882.

After the sale, and while the sheriff had the proceeds, plaintiffs in error, Welsh *et al.*, placed in his hands, with notice to hold up said funds, various justice court *fi. fas.* issued upon judgments rendered in their favor against R. L. Massey subsequently to the date of the mortgage of Lewis & Son and after the sale of the goods. Lewis & Son ruled the sheriff. Plaintiffs in error having been made parties to the rule, upon the hearing, the foregoing facts were proved.

Plaintiffs in error moved to quash the mortgage *fi. fa.* of Lewis & Son upon the following grounds:

(1.) That O. C. Cheeves, the notary public who attested

the mortgage, was the brother-in-law of E. B. Lewis, who was a member of the firm of John F. Lewis & Son at the time of the attestation, and he was the only witness to said mortgage.

(2.) That the description of the property mortgaged, at set forth in the mortgage and mortgage *fi. fa.* was too meagre, indefinite, vague and uncertain to affect the rights of other creditors.

The court overruled the motion to quash the mortgage *fi. fa.*, and after hearing argument, ordered the sheriff to pay over the fund in his hands, less the cost of the proceeding, to John F. Lewis & Son, on their mortgage *fi. fa.* Welsh *et. al.* excepted.

W. H. FISH; HAWKINS & HAWKINS; R. G. OZIER; J. M. DuPREE, for plaintiffs in error.

T. P. LLOYD; N. A. SMITH, for defendants.

JACKSON, Chief Justice.

It appears from the record that the mortgage of defendant in error was foreclosed before either of plaintiffs in error had recovered a judgment against the defendant whose property had been sold after it was attached, being perishable, under an order for that purpose passed by the ordinary, by virtue of authority vested in him by section 3648 of the Code; that the attaching creditor, whose attachment caused the sale, is the defendant in error; that the goods sold for full value, and that, on a money rule to distribute the fund so brought into court by this sale of perishable property, the judge of the superior court, acting as judge and jury by consent, ordered the fund paid to the defendant in error, who was the mortgage creditor. To this judgment the other creditors except, and say that the court erred on several grounds.

1. First, because a relative of the mortgagee attested the mortgage as a witness, and was the only witness to it. We know of no law which makes it illegal that a brother-

in-law of the mortgagee shall witness the mortgage, though he be a notary public, or that this fact makes the record of the mortgage on his attestation *ex-officio* illegal. The case relied on in 46 *Ga*, 253, differs from this. There the attorney of the mortgagee administered the oath to the attesting witness, and the court held that, under section 443 of Irwin's Code, 408 of the Code now, which prohibits attorneys, when notaries, from taking the affidavits required of their clients; an oath so taken to admit a mortgage to record was illegal. It rested on the special statute limiting attorneys' power in respect to clients, and certainly the principle should not be extended beyond the case ruled, and facts just like it.

2. Secondly, error is assigned that the description of the property is not sufficient in the mortgage. The mortgage begins: "$510, Montezuma, Macon county, Ga.," and then follows the promissory note, and then these words: "Now, in consideration of the above advance of said sum of money and to secure" etc., "I mortgage, sell and convey all of my entire stock merchandise now on hand and hereafter to be received, contained in my brick store, west side of Dooly street, between Hill & Shumate and Vinson & Jarnagin," etc.

The whole paper evidently means, when construed together, "the goods in my brick store" in Montezuma, Macon county, Georgia, and on a certain street and between two other stores therein. All the merchandise in that store and to be in it; that is, to supply the place with new goods as the old are sold, is about as specific as it could well be made; and much more so than some which have been upheld by this court. 46 *Ga*., 253; 55 *Ib*., 543; 58 *Ib*., 391, 178. Besides, it was recorded in Macon county, and it was proved that the only store defendant had was that on the street and the spot described in Montezuma.

3. The sale was not encumbered with the mortgage. It could not be. It was necessary to sell to secure it, to save it from perishing. To do that, it was necessary to

sell the whole title, and all was sold without any incumbrance, and must have been, or the statute authorizing it is nonsense and inoperative for right wherever there is a mortgage.

4. The mortgage was foreclosed before the money was distributed, and that brought it in time to claim it under the money rule. Even if it had not been foreclosed, as the whole property was sold, it would have been entitled. 21 *Ga.*, 408; 22 *Ib.*, 34, 69. The sale of perishable property will always defeat the lien of the mortgage, if unforeclosed, unless in such a case it attaches to the money, and whenever the property is so sold because perishable, the lien will attach, and the money will stand in place of that which would have perished but for its transformation into the durable form of money. So that, whatever may have been the rule in other cases and under other circumstances, wherever perishable property is sold to preserve it, the liens of all parties on the property will attach to the money. Besides, there was no judgment held by any body when the sale occurred. Is the mortgage to be placed in a worse condition to claim money than an open account or a note? If the last named, turned into judgments after the sale, can claim, why not the mortgage?

Judgment affirmed.