## JONES *v.* HOWARD.

1. The lien of a distress warrant attaches at the instant of its levy; and as against liens imposed by law, the lien of a mortgage, if registered in due time, attaches from the time of its execution. Hence, where in a contest between a mortgage and distress warrant for the appropriation of a fund arising from a sale of the mortgaged property there is no evidence that the respective liens attached on the same instant, there is no error in refusing a request to charge based on the theory that the respective liens arose simultaneously, and were for that reason of equal dignity, although both the execution of the mortgage and the levy of the distress warrant occurred on the same day and were, as to the performance of some of the acts necessary to the completion of each lien, contemporaneous.

2. Actual or constructive seizure, as distinguished from the oral declaration of an officer of an intent to seize or that he had seized property under a writ then in his hands for execution, is essential to the completion of a levy; and hence, the mere appearance of an officer in possession of an execution at a store of the defendant, accompanied by the announcement that he had come to levy upon a stock of goods therein, does not constitute such a seizure as would amount to a levy of the writ then in his hands.

3. It is competent for one who is the attorney at law of a creditor and authorized to prepare a mortgage on his behalf, likewise to be the agent of such creditor to receive for him the mortgage after it is executed and prepared for delivery; and delivery to such an attorney is a good delivery to the mortgagee.

4. In such a case, if the attorney is likewise a notary public, he is in his official capacity a competent witness to the mortgage.

5. There was no error in admitting evidence; the verdict was warranted, and there was no abuse of discretion in denying a new trial.

August 24, 1896.  Argued at the last term.

Money rule.   Before Judge Milner.   City court of Cartersville.   June term, 1895.

| 99 | 451 |
| f107 | 144 |
| 108 | 145 |
| 99 | 451 |
| f122 | 448 |
| 99 | 451 |
| 124 | 677 |

*J. M. Moon* and *J. W. Harris, Jr.*, for plaintiff in error.

*J. M. Neel*, contra.

ATKINSON, Justice.

The questions in this case arose upon a rule against the sheriff for money realized by him from the sale of property levied on under a distress warrant. The contest was between the lien of a distress warrant held by the plaintiff in error, and the lien of a mortgage executed by the defendant in the distress warrant upon the property levied on and sold under the distress warrant. It appears from the record, that upon the day that the distress warrant was issued, the defendant in that warrant, one White, instructed A. M. Foute, an attorney at law, to draw a mortgage upon the property afterwards levied upon by the distress warrant to secure the payment of a certain indebtedness which he (White) owed to Howard, the defendant in error. Thereupon Foute proceeded to the place of business of Howard, told him of White's instructions, asked for and received from him the promissory note for the purpose of securing which the mortgage was to be executed, and then went to the store of White for the purpose of having the mortgage signed. Foute testified (and his testimony upon that point is corroborated by that of several other witnesses), that just upon the instant of his attesting the mortgage as a notary public, the officer charged with executing the distress warrant entered the building; that at the time the officer entered the building the mortgage had been signed by the maker and by one subscribing witness, but as to whether it had been in fact signed by him as a subscribing witness in his official character as notary public, he did not remember accurately, though such was his best recollection; that as the sheriff entered and spoke to Mr. White, he folded up the paper and stepped out of the door, going directly to the office of the clerk of the superior court, where he delivered it to the clerk for record; that he had not been employed by Howard, the mortgagee, to take the

mortgage, but in procuring it as security for the payment of the debt he considered himself as representing Howard; that Howard gave him no directions as to having the mortgage filed, but that he knew this was necessary, and he did it upon his own motion. He further testified, that at the time White came to see him about preparing the mortgage, White stated to him that he expected Jones, the plaintiff in the distress warrant, to close him up under that proceeding, and that he was desirous of securing Howard before the distress warrant was levied; that no sheriff was in the store at the time he arrived there, and no one except Mr. Chas. White and his brother, Mr. T. W. White, was in there; that as he walked in, he said to Mr. White, the mortgagor, "I have the mortgage ready, Mr. White"; that White stepped around behind the counter or desk, and he immediately signed it, that Warren White, his brother, was standing there, and witness asked him to sign it also. He did so, and then witness signed it as notary public. Just as the signing was through, Mr. Franklin (the sheriff) stepped in. When he stepped in, the mortgage had been signed by Mr. White and T. W. White, and he witnessed it. As to the circumstances attendant upon the execution of the mortgage, this witness was corroborated by others whom he stated to have been present. Franklin, the sheriff, sworn on behalf of the plaintiff in the distress warrant, testified, that he was the officer who levied the distress warrant; that he saw C. H. White when he first entered, told him at once that he had a warrant for rent, and had to levy on everything in his house. White said something about being busy then. Witness passed right on through the house to the back door, and White in the rear of the house placed his hands on some goods, and shut the back door, then went to the side door and tried to shut it, then went to the front door to shut it, and after he had shut side door and was going to the front door, saw A. M. Foute leave the place. When witness first got to the

store, saw A. M. Foute; he was standing at the desk of
C. H. White, on his left hand side as you go in, with a pen
in his hand; saw T. W. White, one of the witnesses to the
mortgage, go around towards the desk where Foute was
standing.    C. H. White was standing in front of the desk
when witness first entered.    Witness said no more to
White about levying the warrant.    "Levied it when he
first went in, and told White he had to levy on all in the
house."    Is positive that Foute was standing at the desk
with pen in his hand when he first entered the house.
Then went to an attorney's office and prepared the written
levy which was in evidence.    The jury found in favor of
the mortgagee.    A motion for new trial was made upon
the general grounds that the verdict was contrary to law,
evidence, etc., and that the court committed certain errors
upon the trial, which we will hereafter consider.

1. During the course of the trial, the court was
requested in writing to charge the jury: "If the jury con-
clude from the evidence that the levy of the distress war-
rant and the execution of the mortgage were simultaneous,
then they should prorate the fund."    This request was
refused.    There was a conflict of evidence as to the exact
point of time when the levy was made, and the evidence
was equally conflicting as to the exact point of time at
which the lien of the mortgage attached.    The two liens
were not established by the same act, and it is therefore
impossible to apply to this case the doctrine of those cases
which hold that concurrent liens simultaneously arising,
in consequence of their creation by the same instrument,
are of equal dignity, and are therefore entitled to equal
rank in the distribution of a fund; nor can the doctrine
that judgments bearing equal date, each having an equal
lien upon the property of the defendant, shall be entitled
to prorate in the distribution of a fund, apply.    In the
latter class of cases the liens of the judgments are estab-
lished by fixed rules of law, and though they may be

rendered by different courts, or in the same court upon different days, yet their liens may be, in law, concurrent, because attaching at the same time. Our code provides, in cases of judgments, that the liens of judgments rendered at the same term of court are of equal dignity, and therefore, while in point of time of rendition they may not be simultaneous, they are treated as having been rendered at the same time when the question of their respective liens is under consideration. Not so, however, with a case where the lien of the judgment or the lien of the mortgage is referable to the independent act of two private agencies respectively employed in their creation. It is impossible for each of the several acts necessary to the creation of the lien to be accomplished upon the same instant of time in such manner as to render them exactly simultaneous. Either the lien of the distress warrant or the lien of the mortgage first attached, and was, as a consequence, superior to the other. They could not attach at the same time in the sense necessary to make them concurrent liens. The lien of the distress warrant attached upon the instant of its levy. The lien of the mortgage attached upon the instant of its execution. The liens of the respective instruments were referable in the one case to the fact of levy, and in the other, to the fact of execution. Any difference of time in favor of one or the other would suffice to give that lien the preference. The conflict in the evidence is as to which lien first attached. That one attached before the other is clear under the evidence. Just which one attached first is the question concerning which the doubt arises. There was no evidence upon which the theory that the two liens attached simultaneously could be based; and therefore the court committed no error in refusing the request above referred to, which might have had the effect, if delivered, to produce a compromise verdict, which would be manifestly illegal, in taking from the one person and giving to another that to which he was not entitled. The

court properly referred to the jury directly the question as to which was the prior lien in point of time, and properly refused the request.

2. The court was likewise requested to charge the jury, "The levy was complete when sheriff with distress warrant appeared and announced to the defendant in the warrant that he had come to levy on everything in the house, that then everything in the house was in the custody and possession of the sheriff." This request was refused, and upon its refusal error is assigned. To the completion of a levy, seizure, either actual or constructive, is absolutely indispensable. Actual seizure is accomplished by a manucaption of the thing intended to be seized. A constructive seizure is accomplished by the actual reduction by the officer of the property intended to be seized to his own control. He must have brought such property so far under his subjection that he could exercise control over it. He must exercise or assume to exercise dominion by virtue of his writ. He must do some act for which he could be successfully prosecuted as a trespasser, if it were not for the protection afforded him by the writ. For a full discussion of the question of what acts are necessary and sufficient to constitute a completed levy, see *Corniff* v. *Cook*, 95 *Ga.* 61. Seizure actual or constructive, and not the mere declaration of an intent to seize, is the final test of the completion of a levy. The request which was refused, and of which complaint is made, makes the mere utterance of an oral declaration of an intent to levy the equivalent of an actual seizure. Suppose the sheriff had entered, and, in the language of the request, announced to the defendant in the warrant "that he had come to levy on everything in the house," and had done no act beyond that, not even exhibiting the writ under which he professed to act, could it be held that the officer, by this mere verbal declaration, had so far deprived the defendant of the possession of his property as to support an action against him

for a trespass? To ask the question, it seems to us, is to answer it in the negative; and when the court refused to charge that such an announcement was the equivalent of a seizure of the property so as to fix upon it the lien of a distress warrant, no error was committed.

3, 4. Error was assigned upon the admission of the mortgage in evidence, over the movant's objection that Foute, the attesting notary public of the mortgage and upon the strength of whose attestation it was admitted to record, was in the same transaction the attorney at law of the mortgagee, and was disqualified by said agency from acting as notary public in its attestation. Error was likewise assigned upon a charge of the court, which was as follows: "Well, you look to the evidence and see from it first in what capacity did Foute act in drawing that mortgage; did he act solely as agent for White, or was he, by the circumstances, in any part of the time acting as agent and attorney for both parties in drawing that mortgage and executing it, witnessing it and recording it and putting it upon record? If you find that he was acting for both parties and White signed it, and it was witnessed and delivered to Foute, and he acting in that capacity, then it would constitute a valid mortgage from the time of its actual delivery to Foute, and it would be immaterial as to whether it was filed with the clerk for record or not in that view of the case."

We will consider these two assignments of error in their inverse order. It will be noted that this was a contest between a mortgage duly recorded, and a lien arising upon a levy of a distress warrant. It was a contest between a lien acquired by contract and a lien imposed by law, and in the case of *Donovan* v. *Simmons*, 96 *Ga.* 340, it was held that the registry act of 1889 (Acts of 1889, p. 106), which provides when transfers and liens shall take effect as against third persons, has no application to a case of the character now under consideration. The question is

whether a delivery to Foute and filing of the mortgage by him can be treated as a good delivery to the mortgagee. We think, under the evidence in this case, that Foute in obtaining the mortgage and in effectuating the security was the agent of the mortgagee. That he was so treated by the mortgagor is not open to question, for the mortgage was delivered by the mortgagor to Foute with the express intent of having him effectuate the lien. We know of no reason why he could not lawfully be the agent of both parties for this purpose. The agency did not involve the execution of the mortgage, but the mere acceptance of it upon the part of the person intended to be benefited by its execution. When Howard delivered to Foute the note intended to be secured, and with the purpose that he should obtain from White the mortgage which the parties then had in contemplation, from this fact alone a power to receive it for Howard might be well implied. We think, therefore, the court properly charged the law bearing upon this question.

The objection to the mortgage upon the ground that Foute, being the attorney at law of the mortgagee, was not competent, in his official capacity as notary public, to attest its execution, we think without merit. It was held in the case of *Sloss* v. *Southern Mutual B. & L. Association*, 97 *Ga.* 401, that "The attestation of a deed by an attorney at law, as notary public, who represented both the grantor and the grantee in the negotiations leading up to the execution of the instrument, does not render the deed invalid, and upon such attestation such deed may be lawfully admitted to record without further probate." And for analogous cases see *Wardlaw* v. *Mayer*, 77 *Ga.* 620; *Welsh* v. *Lewis*, 71 *Ga.* 387; *Conley* v. *Campbell Printing Press & Mfg. Co.*, 78 *Ga.* 569. The case of *Nichols* v. *Hampton*, 46 *Ga.* 253, relied upon as holding a contrary doctrine, is not in point. In that case the attorney at law took an affidavit of his client for probate of a mortgage,

which, under section 408 of the code, he was prohibited from doing. There is no similarity between the questions made in that case and the question made here, but in the case in the 71 *Ga.* 387, above cited, this court ruled, referring to the case in 46 *Ga.* 253, that the doctrine of that case rests upon the special statute, and will not be extended beyond its provisions by implication.

5. Upon a careful examination of the evidence in this case we find that it was sufficient to support the verdict, and accordingly the court did not err in refusing a new trial.                              *Judgment affirmed.*