MOORE, administrator, *v.* BROWN, BRADBURY & CATLETT FURNITURE COMPANY.

1. When the movant in a rule against a sheriff, to distribute a fund arising from the sale of personal property, alleged that by virtue of a process placed in the hands of the sheriff, under which the money was raised, such movant was entitled to have the same paid to him, and the sheriff's answer contained no denial of the allegations made in the petition for the

rule, and where another creditor intervened, made himself a party, alleged that there were various other creditors who claimed prior liens on the fund, but that the intervenor was entitled to priority over all, prayed that the other creditors be made parties, averred that the original movant had no lien on the fund, because of the invalidity of the levy of his process, traversed the fact of the levy, and waived answer and discovery from all, such intervening creditor held the affirmative of the issues tendered by him, and there was no error in ruling that the burden was on him to show the facts alleged in his intervention.

2. In order to constitute a levy on personal property, a seizure of such property must be made by the levying officer. The seizure may be actual or constructive. In the latter case, it is sufficient if the officer in fact has the custody or control of the property personally or by an agent.

Argued December 20, 1898. — Decided March 21, 1899.

Rule to distribute money. Before Judge Reid. Fulton superior court. March term, 1898.

*King & Anderson,* for plaintiff in error. *Simmons & Corrigan, King & Spalding* and *Arnold & Arnold,* contra.

LITTLE, J. The questions arising in this case grow out of a rule for the distribution of money. The rule was brought by the Brown, Bradbury & Catlett Furniture Company against the sheriff, and alleged that a certain fund was in the hands of the sheriff which had been raised by the sale of personal goods levied on by an attachment issued at the instance of the movant, and that movant had recovered a judgment against the defendant and was entitled to have the fund paid over to it. Pending this rule Moore, administrator of Jackson, intervened and set up the fact that he had caused to be levied a distress warrant on the goods, which had been sold by order of the court, and the proceeds were in the hands of the sheriff for distribution; that the movant had no valid lien upon the goods nor the fund in the hands of the sheriff, because of the fact that the attachment sued out by movant had never been levied on the goods. He traversed the entry of levy of the attachment, and alleged that certain liens of laborers had been foreclosed, and that his lien on the fund was superior to those of the laborers. He waived discovery from all of the parties, and prayed that the court would award him the fund in preference to the movant or the laborers. The court ruled that the affirmative of the issue and the burden of proof was upon Moore, administrator. To this ruling he excepted.

1. By section 5160 of the Civil Code it is provided that the burden of proof generally lies upon a party asserting or affirming a fact, and to the existence of whose case the proof of such fact is essential. There was no issue between the original movant, who is the defendant in error here, and the sheriff. The administrator of Jackson, however, intervened; prayed that certain other creditors be made parties to the rule; asserted that his lien was superior to those of the other creditors whom he asked to be made parties, and that in fact the attachment on which the movant had founded its rule had never been levied on the property and consequently had no lien thereon; and prayed that the whole fund should be awarded to him. A rule against the sheriff for the distribution of money is in the nature of an equitable proceeding. The original movant set out in its claim the fact that the money which arose from the sale of the property of the defendant in attachment was in the hands of the sheriff, and asked the court to award it to movant. The facts set forth in the intervention of the plaintiff in error made him the moving party to have the questions raised by his intervention settled by the court. He asserted that the movant, who sought to have the money from the sheriff, in fact had no lien upon it, and brought into the case the other creditors having a claim against the fund, and asserted the priority of his lien over all. Under these circumstances, it would seem that the plaintiff in error was the party moving and raising the issues of law and fact between himself and all the other creditors. We think there was no error on the part of the court in ruling that the affirmative of the issues raised and the burden of proof to support the same was on the plaintiff in error.

2. The only other question which we consider it is necessary to decide in this case is that of the validity of the levy of the attachment. It seems to be conceded, if what was done under the attachment amounted to a valid levy, that such levy was made prior to the time of the levy on the same property of the distress warrant which had issued at the instance of the plaintiff in error. So that, if the levy of the attachment was good, then the plaintiff in attachment would be entitled to pri-

ority in payment over the distress warrant; if not good and valid, then the plaintiff in the distress warrant would be entitled to priority over the attachment in the distribution of the fund. If this position is not conceded, then from the pleadings and proof in the record we find that the question turns upon this point. In order to ascertain whether the levy made by the attachment was valid, it will be best, perhaps, to determine what constitutes a valid levy. In both instances the levies alleged to have been made were upon personal property and the same property, as belonging to the defendant in attachment, who was also the defendant in the distress warrant. It may be said, in the outset, that the statutes of the different States, in many instances, declare what acts of an officer having possession of proper process constitute a levy on personal property. Freeman, in his work on Executions, vol. 2, § 260, in treating this subject under the principles of the common law, says: "It is not sufficient that the officer merely makes an inventory of the property and endorses the levy upon his writ. He must go where the property is. He must have it within his view. It must be where he can exercise control over it. And he must exercise, or assume to exercise, dominion by virtue of his writ. Generally there must be a taking of the property into the possession of the officer, and a divesting of the possession of the owner. The officer must maintain his possession and control to such an extent that the property could not probably be taken from his custody without his knowing it." There is but one of the conditions embraced in this dictum to which we will call attention, and that is that the officer must have the property within his view. The authorities for this doctrine are a number of cases which are found in note 2. One of these is the case of Taffts v. Manlove, 14 Cal. 47. In that case the officer went to the storehouse to make the levy, the store being closed. He stood at one door and put his companion at the other. No note or memorandum of the levy was made, nor was there any evidence that the officer knew what goods were in the store, or their description or value. These are the acts which it was alleged constituted a levy. It was, of course, properly ruled that it was, in law, no seizure of the

property. Another case cited is that of Wood v. Vanarsdale, 3 Rawle, 401. In that case it was held that if the property was within the power and control of the sheriff when the levy was made, it would be good if followed up within a reasonable time by his taking possession in such a manner that others may know that it has been taken in execution. Another case cited is that of Brown v. Pratt, 4 Wis. 512. There the officer attempted to levy upon a quantity of saw-logs which were in different places in a river, for a distance of more than a mile, and some in mill-ponds covered with ice. In fact he was never in the actual possession or control of any of the logs. It was held in that case, that the logs were not all in view of the officer, and that no levy was in fact made. Another case is that of Duncan's Appeal, 37 Penn. St. 500. It was there ruled that, to constitute a valid levy under an execution, it is essential that the property levied be in the power, *or in the view*, of the sheriff at the time it was made. In the opinion the court says : "We have departed from the strictness required by the English courts to constitute a levy. We do not require the sheriff in all cases to take actual and exclusive possession of personal property ; but it never yet has been held that a levy can be made upon property not in the power or at least in the view of the officer." The last case which we have examined to support the text referred to, is that of Minturn v. Stryker, 1 Edmonds' Reports, 356. It does not appear in that case that the officer saw the property or had it under his control, nor did he make it known that he had levied, but gave the plaintiff to understand that he did not mean to exercise any control over it. He did not take actual possession ; the goods were not brought within his view, and all he seems to have done was to notify the president of the village. There are authorities cited by the author to establish the doctrine that to constitute a levy of personal property the officer must have it within his view. The adjudications referred to do not sustain the literal meaning of the text. But from all those cited, it is sufficient if the property be in the control and custody of the officer. So much for the elements which constitute a levy of personal property under the common law.

Our statute (Civil Code, § 5452) provides, that to authorize a sale of personal property, there must be an actual or constructive seizure. Our own court has made many adjudications on this question. To some of these we will call attention. In the case of *Corniff* v. *Cook*, 95 *Ga*. 61, this court ruled that "Where a constable, having in his possession an attachment against a private corporation, went to a house in which personal goods of the corporation were located, for the purpose of levying upon the same, made an inventory of the goods (they being at the time under his view, in his immediate presence, and constructively in his possession), informed the only servant of the corporation present that he had levied upon the property, and thereupon immediately went to the president of the corporation, who, upon being informed of what had been done, agreed with the officer that if the goods were not removed from the house the same should be held subject to the order and control of the officer," the levy was sufficient, though the constable did not take manual custody of the goods, nor remove them from the house. In the case of *Roebuck* v. *Thornton*, 19 *Ga*. 149, the court in the opinion says: "What is the essence of a levy? It is the sheriff's getting power over the property — such power as will enable him to sell it at the proper time and place. This he gets whenever he gets the property into his own hands, or into the hands of another as his agent. There is no law saying that the defendant in fi. fa. shall not be this agent. That this is the essence of a levy, is, it seems to me, admitted, when it is admitted, as it is in many American cases, that a levy is good if the sheriff sees the property, although he does not touch it." In the case of *Sheffield* v. *Key*, 14 *Ga*. 528, the court, in delivering the opinion, says: "We would not be understood as holding that an absolute manucaption was necessary; but there should have been some sort of custody and control which would have served to designate the extent of the intention to seize and take possession, and definitely have marked the bounds of the sheriff's qualified property in the subject of levy. And then the entry on the fi. fa. should have corresponded." In the case of *Jones* v. *Howard*, 99 *Ga*. 451, in ruling on the question as to what the officer must do so as

to make a valid levy, this court said: "He must do some act for which he could be successfully prosecuted as a trespasser, if it were not for the protection afforded him by the writ. . . Seizure actual or constructive, and not the mere declaration of an intent to seize, is the final test of the completion of a levy." These adjudicated cases, together with the provision of our code, lay down the rule to be, that in order to constitute a valid levy on personal property, the officer having possession of a proper process must obtain the custody and control of the goods upon which he levies; that this custody may be either actual or constructive, but without such custody there is no seizure; without a seizure there is no levy.

Tested by these rules, we are of the opinion that the levy of the attachment was a good and sufficient seizure of the property. The presiding judge, to whom questions of fact were submitted, so found. Some of the witnesses testified that the sheriff having possession of the attachment, accompanied by the attorney for the plaintiff in attachment and another person, went to the Jackson Hotel for the purpose of levying the attachment on the furniture contained in that hotel; that on their arrival there, the manager of the hotel, the person in charge of the property and furniture, was informed that the officer had come for the purpose of making a levy on the articles described in the attachment; a list of these articles, which consisted mainly of household furniture, was read over to the manager, and he was asked if they were in the building; the manager replied that all the articles were in the building; that there was in his sight, at that time, the dining-room furniture, the office furniture, all of which was described; that the hotel had three entrances, and that the office in which they stood, and the space in front of it, were the only method of ingress and egress to the hotel; just in front of the office was the stairway leading to the floors above, and an elevator. When the officer had explained to the manager the purpose for which he had come, the manager asked if the matter could not be held up until he could see his attorney; he was informed it could not be done unless the manager agreed to hold the property for the sheriff. After such agreement, according to these witnesses, an entry of levy

was written out and signed at half past 9 o'clock.   The manager left to see his attorney; the officer and plaintiff's attorney remained. Another witness testified that he took the attachment and read over to the manager, item by item, a list of the articles of furniture on which the attachment was to be levied, and asked if these items of furniture were in the hotel.   After going through this and ascertaining from the manager that all were there, the manager was then told that the sheriff would make his levy.   The manager was also told that no objection to delay would be made, provided he would relinquish charge of all the enumerated property and turn it over to the sheriff and allow him to make his levy.   The manager then told the sheriff, "You can take charge."   The officer then remained inside of the office, stepped into the rear and front dining-rooms, and thereupon levied on and took control of what furniture was there, remained in the office near the only entrance to the upper stories of the hotel until the list was prepared, when the entry of levy was made, annexed to the attachment papers, and returned to court, and the officer remained in charge until the manager returned.   After these things, which constituted the levy of the attachment, had been done, a constable, having possession of the distress warrant, came to the hotel, went through its various rooms, took an inventory of the same property, and entered his levy on the distress warrant.   The deputy-sheriff having possession of the attachment, accompanied the constable to the up-stairs rooms of the hotel, for the purpose, as stated, of verifying the list of furniture contained in the upper rooms, on which he claimed to have made a levy.   Subsequently it was agreed between all the parties that the furniture should not be removed until necessary, so as to allow the hotel to continue business with the use of such furniture.

We have not, of course, attempted to refer to all of the evidence.   On some points it was conflicting.   It was the province of the trial judge, to whom the facts were submitted, to judge this evidence; and he having determined the levy of the attachment to be good, and the evidence to which we have referred being sufficient to sustain that finding, we think with him that the acts of the officer, thus detailed, constituted such

a constructive seizure of the property under the process of attachment as to make a good and valid levy. There was, consequently, no error in awarding the fund to the plaintiff in attachment, that having been first levied, in preference to the plaintiff in the distress warrant.

Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., and Cobb, J., who were disqualified.