## STAR LAUNDRY CO. *v.* MAY DRY CLEANING CO.

No. 9113. NOVEMBER 18, 1932.

*Kennedy & McWhorter,* for plaintiff in error.
*Abrahams, Bouhan, Atkinson & Lawrence,* contra.

BECK, P. J. The petition in this case alleges that May Dry Cleaning Company owned and operated a dry cleaning establishment which they agreed to sell and Star Laundry agreed to buy for $7000.00, of which sum $2000.00 was to be paid cash and the balance to be paid at the rate of $300.00 every three months, and a mortgage to be given to cover the deferred payments. The plant

building was to be rented at $50.00 a month for three years. A letter making the offer and a letter of acceptance constitute the contract in the case. These two letters are as follows:

"Savannah, Ga., September 25, '31.

"May Dry Cleaning Co., Savannah, Ga.

"Dear Sir: We have your inventory and have gone over it carefully. Your figures are no doubt correct according to best of our knowledge of new machinery. Of course depreciation must be taken, and we feel that 40% would be a fair allowance for this. Some pieces perhaps would not take this amount while others would take more. We need a plant and would prefer to buy an established plant rather than add a new one, even at a lowered price. We feel that the following would be a liberal offer on today's market and under present conditions: We will pay you $7,000.00 for plant machinery as listed, including two trucks not listed; also office equipment at plant and Bull St. office, and specific right to use May Dry Cleaning name. We propose to rent your plant at $50.00 per month for a period of three years, with privilege of three or five years additional. Now we will pay $2,000.00 cash, and give you a principal mortgage note to cover balance with a series of notes of $300.00 each, payable every ninety days. If a plan we now have under consideration is adopted, we will be able to retire the full amount by January 1st. We shall be glad to have your reply as soon as you can conveniently confer with your board members.

"Yours very truly, The Star Laundry Co. Jno. R. Dekle, Pres."

"Savannah, Ga., Sept. 29, 1931.

"The Star Laundry Co., Jno. R. Dekle, Pres., Savannah, Ga.

"Dear Mr. Dekle: We acknowledge receipt of your letter of Sept. 25th, and accept your offer to purchase all plant machinery as shown on list hereto attached, a copy of which was submitted to you several days past; also two Ford delivery trucks, also all office equipment at the plant and at the Bull Street office. We agree to transfer to you the right to use the name of The May Dry Cleaning Company, and or its trade-mark (THE MAY WAY) forever. You to pay the principal sum of $7,000.00, payable as follows: In cash $2,000.00; your notes for the balance of $5,000.00, payable $300.00 each ninety days. We further accept your proposal to rent the premises at which our plant is located, 669 Duffy Street East, for

a period of three years, with the privilege of renewal for a further period of five years—you to pay us the sum of $50.00 per month as rental.

"Yours very truly, May Dry Cleaning Co., J. P. McMahon, President."

The list referred to and attached need not be set forth in full, as it includes numerous items of personal property which were a part of the plant. In an amendment to the petition, among other allegations, is the statement that "the two Ford delivery trucks mentioned in the May Dry Cleaning letter of September 29, 1931, were the only trucks owned by the company, and were the two trucks the defendant had in mind in their offer of September 25, 1931, and referred to as 'two trucks not listed.'" The defendant refused to carry out the contract, and the plaintiff brought this suit, praying for judgment for the $2,000.00 cash payment and for specific performance as to execution of lease and mortgage and notes to cover the deferred payments. The defendant filed demurrers, in which it raised the contention that plaintiff can not maintain the action for specific performance; that the contract is not binding, because, as it avers, there was not an unconditional acceptance; and further, because the contract is indefinite.

In the Civil Code, § 5406, it is provided that "The superior courts of this State, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, such as the nature of the case may allow or require." And in § 5407, it is provided that "Any person desiring to obtain equitable relief in the superior court may, in a separate suit for that purpose, or in connection with a suit claiming only such remedy or relief as is administered in courts of common law, claim equitable relief by appropriate and sufficient pleadings, and obtain the equitable relief proper in the case." In *Ford* v. *Holloway,* 112 *Ga.* 851 (38 S. E. 373), this court said: "These acts have been construed by this court with the utmost liberality; and the manifest intention of the General Assembly, that all the remedies and relief to which the respective parties in any civil cause might be entitled should be applied and accorded in one action, has been given full effect." The plaintiff in this case can maintain the common-law action for the $2,000 due, but the balance of the pur-

chase-price, $5,000, was to be paid at the rate of $300 at periods of three months, for which notes and a mortgage were to be given. These specifications as to the contract were expressly set forth in the proposal, and were accepted in the answer to that proposal. While the plaintiff can maintain its action at law for the $2,000 due, it has no common-law remedy to require the execution and delivery of the notes and mortgage referred to, or the lease of the premises. It has a right to these; and having no common-law remedy, it can resort to a court of equity and invoke the aid of that court to grant it specific performance. It can not recover, of course, the deferred payments until they become due; but in the meantime, that its rights may be preserved and not be interfered with or defeated by other intervening creditors, it is entitled to the mortgage and notes contracted for. A court of equity will enforce an agreement to give a mortgage, or mortgages. "Courts have frequently enforced agreements to give a mortgage. An agreement to give a mortgage of land or chattels creates an equitable lien, and specific performance of the agreement may be decreed against the contracting party or his creditors." 36 Cyc. 567. In 25 R. C. L. 295, § 106, it is said: "In jurisdictions recognizing the existence of chattel mortgages, specific performance will be decreed of contracts to execute a chattel mortgage or security on chattels, where the remedy at law is inadequate, and where the complainant is not guilty of laches." In Blake v. Blake, 98 W. Va. 346 (128 S. E. 139), the Court of Appeals of West Virginia said: "That courts of equity will enforce a contract to execute a mortgage or deed of trust, in a proper case, seems to be well settled. . . This relief is given for the reason that the creditor was not willing to rely on the personal security of the debtor; and if specific performance were denied, and the creditor left to his action at law, he would be obliged to rely upon the personal liability of the debtor in spite of the terms of the contract, which many times would not answer the justice of the case. And in this case the plaintiff has been deprived of evidence of the debt due him, the note promised to be executed, which would be an embarrassment in bringing suit at law."

We have set out the contract above, and it is unnecessary further to state its contents; and we are of the opinion that it is sufficiently definite to authorize the grant of specific performance. But we will refer to one feature of the contract. The letter of acceptance

states: "We acknowledge receipt of your letter of September 25th, and accept your offer to purchase all plant machinery as shown on list hereto attached [the list referred to above], a copy of which was submitted to you several days past; also two Ford delivery trucks; also all office equipment at the plant and at the Bull Street office," etc. The mere fact that the acceptance described the trucks "not listed" merely as "Ford delivery trucks" can not change the contract, especially in view of the fact that the plaintiff was selling various items of personal property constituting the equipment of the May Dry Cleaning Company; and especially also in view of the fact that Star Laundry Company does not attempt to show that other trucks were intended. We do not think that indefiniteness in the description of one item of a long list of personal property would render the contract unenforceable because of indefiniteness. The acceptance in this case did not vary the terms of the offer. It made no counter-proposition. The acceptance was of the offer, and made its descriptive terms a little more definite. It assented to the offer in the same sense in which that offer was made. In *Valdosta Machinery Co.* v. *Finley,* 164 Ga. 706 (139 S. E. 337), it was held: "The court did not err in overruling the demurrer based upon the ground that the description of the property which was the subject-matter of the contract was so absolutely vague, indefinite, and uncertain that the contract itself was void. Parol evidence was admissible in support of the very definite description of the purchased premises as embodied in the petition, and the description was such that parol evidence was admissible for the purpose of identification of the subject-matter of the contract." And in the opinion it was asid: "The subject-matter of the negotiations which the writing purported to record was two pieces of land, one generally known as the Valdosta Machinery Company tract and the other as the Myrick tract. The meaning of this much of the contract is beyond any doubt or question, and required no explanation. 'Parol evidence may always be resorted to for the purpose of explaining the position of the parties and of the subject-matter and other surrounding circumstances at the time of concluding the contract, so that the court may be put into the position of the parties, may see with their eyes, and may understand the force and application of the language employed by them. In this manner the subject-matter may always—as in the

interpretation of a will or deed—be ascertained and identified. For example, a contract by which the vendor agreed to sell "my mill," or even "the mill," would be sufficiently certain, and the subject-matter clearly identified by proof that at the time the vendor owned a mill and but one mill. Such a description would then be as unmistakable as the most elaborate method of fixing and locating the structure. In fact, however detailed the description, there must always be a resort to some parol evidence, either in the form of direct proof, or of tacit admission or assumption by the parties.' Pomeroy's Specific Performance of Contracts (3d ed. 1926), § 161. To this section the author has given a copious note citing a large number of authorities which do not differ from similar cases in our own reports, including the comparatively recent case of *Tolbert* v. *Short,* 150 *Ga.* 413 (104 S. E. 245), where a description of the land was held to be sufficient, by reference to the general name by which a certain tract was well known, to leave further identification, if necessary, to be completed by aliunde evidence, so that under proper allegations in the petition the property as to which specific performance was decreed might be specifically and minutely described. See also *Petreles* v. *Atlanta Loan & Trust Co.,* 161 *Ga.* 468 (131 S. E. 510), and cit. In the case of Barry *v.* Coombe, 1 Peters, 640 (7 L. ed. 295), in the Supreme Court of the United States, Mr. Justice Johnson delivering the opinion, the description of the property was 'your 1-2 E. B. Wharf.' In a suit for specific performance, the uncertainty of this description being argued as a defense, the court said, 'for anything that appears on the face of the instrument, E. B. Wharf may be as definitive a description of locality as F. Street, and then the ambiguity could only arise if it be shown that the bargainer had more than one house in F. Street.' It will be noted that in the petition in this case it is alleged that the Valdosta Machinery Company owned no land in Valdosta other than the two pieces described in the receipt."

We do not think there is any merit in the contention that the location of the property is not sufficiently described. The offer is dated Savannah, Ga., and addressed to May Dry Cleaning Co., Savannah, Ga. The acceptance describes the rental property as 669 Duffy Street East. The offer refers to the subject-matter as "your plant." We think that with the other description found in the

contract the property is sufficiently identified. In *Singleton* v. *Close*, 130 *Ga.* 716 (61 S. E. 722), this court held: "The contract is headed 'Savannah, Ga.'; it indicates that Mrs. Singleton is the owner of the property; the property is described as 'the western portion of lot forty-one (41) Flannery Ward, together with all the improvements contained thereon,' and the contract stipulates that 'seller is to occupy residence No. 221 36th Street West,' until October 1, after the sale. This description identifies the property as being a specific lot in a named ward, having improvements thereon, known by a particular street number, and inferentially in the occupancy of the seller. It is sufficiently identified to satisfy the statute of frauds, so as to allow extrinsic proof to apply the contract to the subject-matter. *Mohr* v. *Dillon*, 80 *Ga.* 572 (5 S. E. 770); Price *v.* McKay, 53 N. J. Eq. 588 (32 Atl. 130); Tewksbury *v.* Howard, 138 Ind. 103 (37 N. E. 355). The place where the contract of sale is dated may be considered in connection with the other marks of identification, in locating the situs of the property as in Savannah, Georgia. *Welsh* v. *Lewis*, 71 *Ga.* 387; *Horton* v. *Murden*, 117 *Ga.* 72 (43 S. E. 786)." See also *Arrendale* v. *Dockins*, 166 *Ga.* 62 (143 S. E. 570). In the opinion in that case Chief Justice Russell quoted with approval from *Thomas Furniture Co.* v. *T. & C. Furniture Co.*, 120 *Ga.* 879 (48 S. E. 333), as follows: "Hence the decisions recognize that very meager terms of identification may be sufficient. Upon an analysis of the cases it will be seen that generally the main element of description was to be found in the parol evidence identifying the article as that referred to in the mortgage. The courts lay hold of slight circumstances to supplement the descriptive words," and the cases cited which support the proposition there made.

In view of what is said above, the court did not err in overruling the demurrers in the petition.

*Judgment affirmed. All the Justices concur.*