32101. BELVIN *et al. v.* BEARD, Sheriff.

DECIDED SEPTEMBER 18, 1948.

*Guy T. Connell, P. Q. Bryan,* for plaintiffs in error.
*L. L. Moore, R. L. Moore,* contra.

FELTON, J. ■ The main question in the case is whether the evidence authorized a finding that there was a legal levy. The plaintiffs in error contend that there was no legal levy because the sheriff did not actually seize the property, post any notice upon it, or do anything which amounted to a constructive seizure. The evidence was substantially as follows: The entry of levy on the attachment showed the levy to have been made at 12 noon on March 26, 1946. T. V. Beard, Sheriff, testified substantially: that after he received the attachment he called the local agent

of the railroad and told him about the attachment, and the local agent told him that he would not bill the property out to the defendants in attachment but would hold it; that later the local agent called him back and told him that the division freight agent was going to move the car and that the sheriff had better see him; that he and one of his deputies drove over to the division freight agent's office and he drove off as the sheriff drove up; that the witness followed him back to town and stopped at Gene Hodges' filling station; that the witness told the division freight agent that he had the attachment and showed it to him, told him that he had already had it up with the local agent, and that he was levying on the property and not to move it; that the division agent told him he would hold it on the line; that the division agent said, "I'm going to let it roll, but we will hold it on the line"; that the division agent told him that he would not let the property get off their line; that he went out to see the property while it was parked at Kingwood; that the division agent said that the property was in the way there, and that he would hold it on the line until he contacted the defendant in attachment and let it make a bond; that the witness told him a bond was all he wanted, and he said he would take charge of it and hold it for the witness; that he didn't leave the property in anybody's charge at Kingwood, nor stick up any signs on the car saying it was levied on; that the car was not hitched to a train when he saw it, and that he saw the division agent within 15 or 20 minutes from the time he left Kingwood; and that there was no switching going on when he was there.

Charlie Moore, local agent, testified in substance: that between 11:30 and 12 o'clock the sheriff called him and told him he had an attachment and levy on the property, asked him to hold the machine up, and said he would bring the papers; that the witness told the sheriff he would hold the machine up; that the witness told the conductor that the sheriff said the property was levied on and not to move the car; that the conductor told him later that the levy hadn't been made, and that the division agent was going to bill the car out himself; that the witness called the sheriff and told him the matter was out of his hands and that he would have to see the division agent; that he didn't know whether the car left out of his jurisdiction the night before and

went into the Kingwood section; that the witness was just local agent; and that Mr. Belvin was division freight agent.

J. P. Belvin, one of the defendants, testified in substance: that he was division freight agent for the receivers of the Georgia and Florida Railroad; that the shovel involved was loaded on the afternoon of the 25th and on the night of the 25th moved to Kingwood; that he had never seen an attachment against the property, that nobody ever showed him one; that at 1:15 he telephoned the sheriff's office to see if they had gotten out the papers and made the attachment; that Homer Phillips, Deputy Sheriff, answered the phone and told him that the papers had not been fixed; that he waited about 15 minutes for the papers to be fixed, and about 1:30 called the conductor and gave him the waybill; that immediately after the train left he told the plaintiff in attachment that he couldn't find any attachment; that he told him so he could get busy; that he went back to his office and that at 2 o'clock he started to town and passed the sheriff and deputy, and they turned around and met him at Gene Hodges' filling station; that the sheriff said he told the local agent not to move the car; that the witness told him the car was gone; that he telephoned the sheriff's office and couldn't find out anything about it; that he could not hold the car just on the strength of his merely telling the agent that he was going to levy on it; that he believed the sheriff had the papers in his pocket, but the sheriff did not show them to the witness; that the sheriff said he'd better get the car back; and the witness replied that it was moving; that the sheriff never put him in charge of it; that at the time the sheriff saw him, the car had been gone 30 minutes; that he was the highest ranking officer in that division of the railroad; that he had no authority at all over the transportation department; that the crew didn't do what he told them to do, they followed the superintendent's instructions; and that he delayed the car at Nashville until he could check into whether a levy had been made or not, but didn't tell anyone.

T. V. Beard, recalled, testified in substance: that Mr. Belvin, the division agent, took the attachment in his hand and said that he would hold it on the line and park it at Nashville until the folks made a bond; that when he talked to Belvin he had not made the entry of levy; and that he handled the transaction.

T. F. Taylor, the plaintiff in attachment, testified in substance: that he sued out the attachment, that he got it about 11 o'clock on the 26th; that he carried the paper to the sheriff's office by himself, and there was nobody there except the sheriff; that he did not talk with Mr. Belvin on the day Belvin said he went to the witness's office and told him about the situation; and that, if he came, it was the next day.

H. H. Welchel, attorney, testified in substance: that he called T. V. Beard Jr., deputy sheriff, and asked him if he had the attachment and what had been done about it, and that Beard replied that he had called C. M. Moore, local agent, and told him they had an attachment, and that was all that had been done; and that he did not talk to the sheriff.

We eliminate, for the sake of brevity, the question whether the local agent had authority to agree to hold the property. We assume that he did not, because the car was beyond his jurisdiction when he is alleged to have made the agreement to hold the car. We shall assume, also, that the car had begun to move and had left Kingwood at the time the sheriff talked to Mr. Belvin. The sole remaining questions are, whether Mr. Belvin agreed to hold the property on the line of the railroad, and whether, if he did, this amounted to a levy together with the attendant circumstances. The evidence was in conflict on the first question, so the jury could and are presumed to have found that Mr. Belvin made the agreement to hold the property until a bond was made. To constitute a valid levy, there must be an assumption of custody and control of the property, either actual or constructive. There was no actual seizure in this case, but where a levy is purportedly made and the defendant in execution recognizes the levy and agrees to hold the property for the sheriff as his agent, there is said to be a constructive seizure. *Moore* v. *Brown, Bradbury &c. Furniture Co.*, 107 *Ga.* 139 (32 S. E. 835); *Sanders* v. *Carter*, 124 *Ga.* 676 (52 S. E. 887); *Myers* v. *Lee & Co.*, 22 *Ga. App.* 20 (95 S. E. 475); Champion Box Co. *v.* Manatee Crate Co., 75 Fed. (2d) 340. If an agreement by a defendant in execution would constitute a constructive levy, we see no reason why a bailee could not do so for his own convenience, or possibly without any benefit to itself, and no authority is cited by the plaintiff in error to the contrary. Even if the train on which the machinery was

loaded had just left Kingwood when the agreement to hold it on the line was made, it would be valid and binding because, if it had not been made, the sheriff could have followed the property within the confines of the State and could have levied on it before it passed the State line. The jury was authorized to find that the division agent had authority to make the agreement. While he testified that the crew members did not follow his instructions, but those of the superintendent, he testified that he himself held the property up at Nashville to ascertain whether a levy had been made. The cases cited by the plaintiff in error to show that no valid levy had been made are those where no agreement was made by anyone to hold the property as agent for the sheriff.

■ The court charged the jury: "Now, constructive possession by the sheriff that will make a levy under a paper he is bound by law to levy and collect, is where the sheriff does not take physical or actual possession of the property, as I have just explained, but when he locates and identifies the property, wherever it may be, or in whose possession it may be, and makes arrangements with some one or the person who has control and possession of it to hold possession of it subject to the order of the sheriff, such seizure would amount to a levy upon his making the proper entry upon the paper he is executing." This charge was excepted to on the following grounds: it failed to instruct that the property must be in the sheriff's immediate presence or view; it failed to instruct that the officer must exhibit the writ to the one in charge of the property; it failed to instruct that the officer must by act or declaration indicate a seizure of the property; it failed to instruct that the officer must make a proper return while the property is in his control; it failed to instruct that the officer must retain custody and control of the property levied on, unless he surrenders it to some one who is present and who agrees to hold it subject to the orders of the officer; it failed to instruct that a declaration by the officer is not sufficient and that an actual levy must be made; and on the ground that it was misleading, confusing, and harmful to the defendants. Under the authorities cited, the charge was correct as far as it went, and it is not a good exception to a correct charge that it did not include other correct and applicable prin-

ciples of law. There was no exception to the charge as a whole on the ground of failure to charge any principle of law.

The court did not err in overruling the motion for a new trial. *Judgment affirmed. Sutton, C. J., and Parker, J., concur.*