## TYSON *v.* WOODRUFF.

Where there is a dispute between the maker and payee of a promissory note touching its validity, depending upon an honest difference of views between them on a doubtful question of either law or fact, and they enter into a compromise or settlement of their differences by an agreement to extend time on the claim and to have the same fall due by instalments ; and when in accordance with this agreement new notes are given and accepted by the parties, maturing at different times, there is a sufficient consideration in law to support the validity of such notes, and the maker thereof can not defend a suit upon them by showing that his contention in reference to the original debt was correct.

Submitted June 10, — Decided July 24, 1899.

Complaint. Before Judge Ross. City court of Macon. August 31, 1898.

*Estes & Jones*, for plaintiff.
*Harris, Thomas & Glawson*, for defendant.

LEWIS, J. J. S. Tyson, as Grand Treasurer I. O. O. F., brought suit in the city court of Macon, against D. B. Woodruff, on two promissory notes of $100 each, given by the defendant on May 28, 1896, each payable to the order of A. L. Kontz, Grand Master I. O. O. F., one due in six months after its date, and the other in twelve months after its date. These notes were indorsed and made payable to the order of J. S. Tyson, Grand Treasurer. The defendant admitted the execution of the notes, but pleaded a total failure of consideration, claiming in his answer that, prior to the making of the two notes sued upon, plaintiff held defendant's note for the aggregate amount of the two notes sued on ; that the first note was given to pay a subscription to the orphans' home, which the Grand

Lodge of Odd Fellows of Georgia at that time proposed to build as a charitable institution to be conducted under the direction of the lodge; that the consideration of this original note consisted of mutual promises, subscriptions, and notes of other Odd Fellows given to the plaintiff about the same time for the purpose of building the orphans' home; that shortly before the defendant gave the two notes sued on, the lodge decided not to build the home, and all the subscriptions for this purpose were annulled and all the notes returned to the makers thereof; and that the two notes sued upon represented the promise by defendant to pay the amount of his subscription towards the construction of the home, the notes being given in renewal of the original note and being without the slightest consideration.

On the trial of the case the following facts were developed: Subscriptions were procured from a number of members of the lodge, contributing money for the purpose of constructing the orphans' home. After receiving notes for such subscriptions from divers parties, the lodge decided, in the year 1894, to abandon the enterprise of the home, and returned these notes to their makers. Among the notes were some which had been given by the defendant in this case for his subscription, and they were likewise returned to him by the lodge. During the existence of the scheme for building this home the defendant, who was a member of the lodge, was requested by the building committee, of which he was also a member, to furnish plans and specifications for a building. He was also on a subcommittee to agree upon plans and specifications. These he furnished, and presented a bill of $500 to the building committee for his work. He was present when the bill was presented, no objection was made thereto, and the committee directed the treasurer to give him a note for $500, due in the near future, which he took and had discounted at bank. Directly afterwards the committee became dissatisfied, and thought they had made a mistake. The lodge was generally dissatisfied with the charges, and when the Grand Master, the chief officer of the order, heard of the giving of the note, he claimed that the lodge was not liable and ought not to pay it, and contended in a letter to the defendant that he (the Grand Master) should

have been consulted before the note was given, and that the defendant ought to know that it was not collectible without his indorsement. A dispute thereupon arose between the defendant and the lodge, and at a meeting of the lodge, the defendant being present, a compromise or settlement of the matter was agreed upon, by which the lodge agreed to take up the note in the bank when it matured, in consideration of the defendant's giving a note of $200 to the lodge, maturing in the future. This agreement was accordingly executed. Afterwards a dispute arose again between the lodge and the defendant, it being claimed by the former that this note of $200 was given as a rebate on the $500 charge for plans and specifications, and was given by way of compromise and settlement of differences between the lodge and the defendant touching the excessiveness of the charges. It further appeared from the testimony that another member of the order, who was an architect, offered to furnish plans and specifications for nothing, on account of his relation to the lodge, and it was thought the defendant would do the same; but he made no contract of this sort. The defendant, on the other hand, claimed that the note for $200 was given as an additional contribution to the orphans' home, and that after that home had been abandoned there was no consideration for the note. There was some evidence to the effect that the note specified that it was for the orphans' home, but the note was not introduced, and it was contended by the lodge that if it contained any such words they were there by mistake. Other meetings of the lodge at which defendant was present were had to adjust the differences between them touching this note of $200. It was finally agreed to submit it to a committee, who recommended that in lieu of the $200, which was past due, the defendant should give his two notes for $100 each, due in six and twelve months, as a settlement of their differences. To this the defendant acceded, and the notes were accordingly given. Good feeling then again arose between the parties, and congratulations were extended to the defendant by the different members that their differences had thus been amicably adjusted. After the notes matured the defendant refused to pay the same, and this suit thereon then fol-

lowed.   The jury returned a verdict for the plaintiff; where-
upon the defendant moved for a new trial on the general
grounds that the verdict was contrary to law and evidence.
Upon this motion the court rendered the following judgment:
" The foregoing motion for new trial having been submitted
for decision according to law, it is considered and adjudged by
the court that, taking the evidence in the record most strongly
in favor of the plaintiff and against the defendant, the notes
sued on are without good or valuable consideration, and hence
the verdict for plaintiff is contrary to law.   Whereupon it is
adjudged, not as a discretionary grant of a first new trial, that
the verdict for plaintiff be, and it is, set aside on the third
ground of said motion only, and a new trial is granted."   The
third ground of the motion is that the verdict was contrary to
law and the principles of justice and equity.   To this judg-
ment of the court the plaintiff in error excepts.

From the facts above recited it will be clearly seen that the
notes sued on in this case were given in settlement of the dispute
between the payee and the maker touching his liability on a
certain claim held by the latter against the former.   There is
no pretense whatever that this was not an honest difference of
opinion touching the facts which constituted the real consider-
ation of the $200 note that had been previously given by the
defendant.   If the contention of the lodge is correct, that note
was intended as a rebate on the defendant's charges made against
the lodge for plans and specifications; and being given in set-
tlement of the dispute then existing between the parties, it was
supported by a valuable consideration.   If, on the other hand,
as contended by the defendant, it was given as a donation to
the orphans' home, then the consideration thereof had failed
when the lodge abandoned the purpose of building the home.
There is no pretense that there was not an honest difference of
opinion between the parties touching these facts.   The dispute
was finally settled amicably, and at the time, so far as the evi-
dence shows, satisfactorily to both sides, by the giving of the
new notes sued on in this case, in which time was extended
for the payment of the claim.   The defendant in his testi-
mony really does not deny that a settlement of these differ-

ences between him and the lodge was the real consideration for these notes. We think there can be no question that such a consideration is sufficient to support the validity of a contract. The law favors a settlement of differences and a compromise of disputed claims between parties. It thus saves the time, expense, and trouble of litigation. It matters not if one party be right and the other wrong touching the validity of the original claim. The real consideration is in bringing about a settlement, preventing further annoyance, uncertainty and doubt, and to avoid, it may be, the uncertain results of a vexatious, troublesome, and expensive litigation. As far as our investigation has extended, the authorities are uniform and unbroken to the effect that when there is an honest difference of opinion between parties touching a disputed claim, and especially if the difference is of such a nature as to render it at all doubtful as to who is correct, any settlement or compromise of these differences will be enforced by the courts, and neither party will be allowed to defend by showing that he was right in his original contention. Of course it does not follow that when one gives a note in renewal of another, the maker is estopped from pleading a want of consideration in the last note. Such a plea may be based upon an entire failure of consideration of the original note for which the last one was given, and the consideration of the latter is not changed from what constituted the consideration of the original debt. But the case is entirely different where the consideration really is the settlement of honest differences between the parties in order to prevent litigation. It is also true that it does not necessarily follow that the settlement of every contract can be enforced. A new note, for instance, given in settlement of an illegal contract between the parties, can not be enforced. A note given for a gambling debt, where there is no dispute between the parties as to its real consideration, can never be enforced, it matters not how many renewal notes are given extending the time of payment. Bishop on Contracts, § 488. But legal authorities on those lines have no application whatever to the facts of this case. In the case of *Morris* v. *Munroe*, 30 *Ga.* 630, it was decided: "Where parties have conflicting claims,

depending upon a law point, and they *compromise* them, each is bound by the settlement, whether the law point turns out to have been for him or against him." In *Parker* v. *Fulton Loan Asso.*, 46 *Ga.* 196, McCay, J., in delivering the opinion of the court, says: "We agree that if there be a dispute bona fide as to whether any particular contract is tainted with usury, that the parties may, by accord and satisfaction settle that dispute; but the payment of the usury is not such a settlement. It must appear that there was a bona fide dispute—uncertainty, doubt as to the existence of the usury—that the parties must have that doubt, dispute, distinctly in view in the settlement, and the resolution of the doubt must be a point of the settlement." See also, on this subject, Bishop on Contracts, § 57; Clark on Contracts, 173 et seq.; 3 Am. & Eng. Enc. L. 837, and authorities cited. Indeed, if any other rule prevailed, settlement or compromise of disputes and differences would amount to absolutely nothing; for in the event of a suit based upon the contract of settlement, either party could go behind that agreement, set up defenses to the original claim, and contend that there was really no consideration for the compromise. Applying the above well-recognized principles of law to the facts of this case, we think that the verdict of the jury for the plaintiff was not only sustained, but was demanded by the evidence, and the court therefore erred in granting the motion for a new trial.

*Judgment reversed. All the Justices concurring.*