No. 33.—Eppy W. Roebuck and another, ex'rs, &c. plaintiffs in error, *vs.* Dozier Thornton, Sheriff, &c. defendant in error.

[1.] The Sheriff goes to levy a *fi. fa.*; the defendant tells him to enter a levy on a negro.  The Sheriff does not see the negro, but enters the levy.  The defendant gives a bond for the forthcoming of the negro.  On the day of sale, the negro is forthcoming, and is sold by the Sheriff: *Held*, that the Sheriff was authorized to sell the negro.

Assumpsit, &c. in Elbert Superior Court. Tried before. Judge ANDREWS, March Term, 1855.

This was an action, by the Sheriff, against a purchaser, at his sale, who refused to comply with his bid. On the trial, the Deputy Sheriff testified that he did not see the negro until the day of sale; that when he went to levy, the defendant in *fi. fa.* told him the negro was there, and to enter a levy on the *fi. fa.*; and defendant gave a bond for the forthcoming of the negro, and in compliance therewith, produced him at the day of sale.

The Court decided and charged the Jury, that these facts constituted a *legal levy ;* and this is the only error assigned in this case.

T. R. R. COBB, for plaintiff in error.

T. W. THOMAS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The negro was produced by the defendant in *fi. fa.* on the day of sale, and was, on that day, sold by the Sheriff.

The question is, did the Sheriff, under the circumstances of the case, have authority to sell the negro ?

The Counsel for the plaintiff says no. His position is, that a Sheriff has no authority to sell property under a *fi. fa.* if he has not actually laid his hands, or at least his eyes, on the property. His idea is, that nothing short of this will amount to a levy.

But do the terms of the *fi. fa.* require as much as this? They are, that "you cause to be made of the goods and chattels, lands and tenements of the defendant, the sum" recovered. In these words, there is nothing about laying hands or eyes on the goods and chattels, lands and tenements.

In truth, these words command the Sheriff to make the

money of some things which cannot, from their nature, be actually seized or seen, as the *remainder* in lands, and indeed, in goods, annuities, stock in banks. (*Watson's Sheriff*, 178. *Pr. Dig.* 452.)

Again: A part of a parcel of goods may be seized in the name of the whole. In such case, a part of the goods is not actually seized, and may not be seen; yet, the whole is levied on. (*Wat's. Sheff.* 172.)

By a Statute of ours a Sheriff may leave the property in the possession of the defendant in *fi. fa.* if the defendant will agree to have it forthcoming at the time and place of sale and will give his bond to that effect. (*Pr. Dig.* 465.)

Under this Statute, therefore, the Sheriff may seize property one instant and the very next deliver it back in exchange for a bond. What need is there for this form of seizure, if the defendant will give the bond without it?

But, indeed, when the defendant gives bond under this Statute, he acknowledges that he, from thenceforth, holds the property, not for himself, but for the Sheriff—he acknowledges that his possession is the Sheriff's possession—he becomes the Sheriff's agent.

Now when the Sheriff, acting under the *fi. fa.* has managed to get the property of the defendant in *fi. fa.* into any body's hands, even the defendant's, as his agent, has he not levied the *fi. fa.*? Has he not seized the property? Is he not in possession of the property?

In practice, what more than this does the Sheriff do whenever he accepts a forthcoming bond? In such cases, it is not one time in ten that he, himself, takes actual manual possession of the property. He takes possession of it by the defendant's binding himself to hold it for him. His whole levy consists in that.

What, then, is the essence of a levy? It is the Sheriff's getting power over the property—such power as will enable him to sell it at the proper time and place. This he gets whenever he gets the property into his own hands, or into the

hands of another as his agent. There is no law saying that the defendant in *fi. fa.* shall not be this agent.

That this is the essence of a levy, is, it seems to me, admitted, when it is admitted, as it is in many American cases, that a levy is good if the Sheriff sees the property, although he does not touch it. For it cannot be meant that the bare sight of the defendant's property will do—the sight of it, for example, when the defendant is making off with it and will, soon have it beyond the Sheriff's reach. What is meant must be, that if the Sheriff gets to see the property; and, in addition, gets a promise expressed or understood from the person having it in possession, to hold it for him till he wants it, that will do. If this be what is meant, *it is* manifest that the virtue of the thing consists, not in the Sheriff's getting this sight of the property, but in his getting this promise. It is certain that seeing property is not seizing property.

Any act by which the Sheriff, acting under the *fi. fa.* gets the defendant's property into his own hands, or any act by which he gets the defendant's property into the hands of any other, not excepting the defendant himself, as his, the Sheriff's agent, amounts to a levy. This, I think, is the true idea of what is essential to a levy.

But be the true idea of what constitutes a levy what it may, the levy in this case must, we think, be held to have been good. The defendant gave a forthcoming bond. That bond,, by its terms, estopped *him* from saying there had been no sufficient levy. But if it estopped him, the purchaser got a good title, for it does not appear that there was anybody else interested in the property. And if the purchaser got a good title, he ought to comply with the terms of the purchase; he ought to pay the purchase money.

This is the substance of what the Court below charged.