## 26718. HUME v. DAVISON-PAXON COMPANY.

290

*George F. Fielding,* for plaintiff in error.

*Houston White, M. M. Anderson,* contra.

MacIntyre, J. This was a suit by Davison-Paxon Company against W. W. Hume, on a promissory note. The trial judge directed a verdict, the defendant excepted, and the case is now before this court for decision. It appears from the evidence that Davison-Paxon Company is a department store and had therein what was designated as a "tube room" in which all the cash taken in the store was each day to be deposited at the close thereof. The cashier of each of the various departments, each morning, was given a bag with a certain amount of money therein which was known as "petty cash," which was to be used in making change, etc., and a receipt was taken therefor. At the end of the day the cashier of each of the various departments was required, under the rules of the store, to return the "petty cash" and whatever cash they took in from the sales during that day to the "tube room," and thereupon obtain the receipt which had been given at the beginning of the business day. One of the duties of those in the "tube room" was to receive at night these bags together with the "petty cash," and whatever money was taken in, and return the receipt given therefor. The auditing department at the close of each business day checked the cash registers to see how much cash was taken in by each department and reported this to the "tube room," then the "tube room" should see that the amount of money returned in the bag by each cashier was the "petty cash" plus the amount of cash taken in during the day as shown by the cash register. The defendant testified in part: "I was in charge of all those girls in the tube room; I had an assistant, and other people in my department that assisted me; their duties were no different from mine; one of our duties was to see that these girls reported back with

these bags." In the instant case, on the day in question, the "petty cash" which the lady cashier received from the "tube room" in the morning was $50, and the cash register which she operated showed that $104 was taken in and rung up, thus she should have returned to the "tube room" $154. The defendant did not or could not produce the receipt of the lady cashier or the money, one of which should have been done under the rules of the store. The defendant testified that the lady cashier stated to him that the money "had been turned in to one of the girls [defendant's assistant]." He further testified: "So it rocked along for three or four days and the manager of the store told me I would have to pay the shortage." Thereafter, a settlement was arranged between the parties, whereby defendant undertook to make the loss good by borrowing from plaintiff enough money to make it up. He signed a loan ticket agreeing that $3 a week be deducted from his salary until the amount was paid, and these deductions were made so long as he remained with the company, which was about three weeks. When he left the employ of the plaintiff and went to obtain his salary check he was advised by the plaintiff that he would have to execute a note for the balance due under the original agreement before his check would be turned over to him. It appears that the defendant agreed to this, signed the note (which is the note here sued on), and the plaintiff delivered to him his salary check. From this evidence it appears without dispute that on a named day the department in control of the defendant checked up short in the sum of $154, which represented an amount of money which was supposed to be turned into that department on that day by one of the cashiers of one of the departments of the store. The defendant contended that he had personally never received the money, and did not know whether the cashier had turned it over as stated by her or not; that he never saw the money and that if it was lost or taken he knew nothing about it, and that therefore he was not responsible for its loss and not bound to pay the amount to the plaintiff. On the other hand the comptroller of the plaintiff's store testified that the company contended that the defendant, as head of the "tube room," was responsible for the money and demanded that he make up the shortage. This certainly constituted a dispute or controversy between the parties. In settlement of this dispute the defendant entered into an agreement

with the plaintiff wherein it was agreed that the plaintiff would lend to the defendant the money to make up the shortage in his department, and that he would repay this amount at the rate of $3 per week which was to be deducted from his salary. This agreement was acted on by the parties for about three weeks, at which time the defendant voluntarily resigned his position with the plaintiff. It further appears that at the time of his resignation, when he requested the amount of salary due him, the plaintiff refused to relinquish it unless he would sign a note for the balance due under the former agreement; that he agreed to this, signed the note (which is the note here sued on), and that the plaintiff thereupon delivered to him his check.

It is the general rule that where parties enter into an agreement, compromising and settling a claim about which there is a bona fide dispute, they are bound by such agreement even though it thereafter appears that the contentions of one of them was without foundation in law. See, in this connection, *Tyson* v. *Woodruff*, 108 *Ga.* 368 (33 S. E. 981); *Prince Hall Masonic Building Association* v. *Howard*, 36 *Ga. App.* 169 (136 S. E. 194); *Armour Fertilizer Works* v. *Wynne Mercantile Company*, 40 *Ga. App.* 842 (151 S. E. 671). In order for such an agreement to be valid "it is not essential that the matter should be really in doubt; but it is sufficient if the parties consider it so far doubtful as to make it the subject of compromise." *Preston* v. *Ham*, 156 *Ga.* 223, 234 (119 S. E. 658). Such an agreement is valid and binding, not because it is a settlement of a valid claim, but because it is a settlement of a bona fide controversy. *Armour Fertilizer Works* v. *Wynne Mercantile Co.*, supra; 5 R. C. L. 877. The consideration supporting it is the existence of a doubtful question, or at least so considered by the parties as to make it the subject of the compromise, and a compromise fairly and deliberately made upon reflection, and the actual rights of the parties, whatever they may be, can not affect the question. *Bell* v. *Lazenby*, 126 *Ga.* 767 (2) (56 S. E. 81); *Baxter* v. *Bank of Grantville*, 48 *Ga. App.* 458 (3) (172 S. E. 810). It is in effect contended by the defendant that in entering into the agreement he conceded all and gained nothing, and that the plaintiff waived nothing, gave up no claim, and furnished no other consideration (*Red Cypress Lumber Co.* v. *Beall*, 5 *Ga. App.* 202 (2), 62 S. E. 1056), and that therefore

such agreement was without consideration and not binding. Even if we concede that the defendant is correct in this, and that the above general principles are not applicable to such agreement, it further appears that at the time of the execution of the note sued on there was a claim upon the part of the plaintiff that it had the right to apply the remainder of his salary due him at the time of his resignation to the alleged shortage, and that the defendant disputed this, but did settle this dispute by executing the note and obtaining a release of the money. The note thus executed is the one here declared on, and we are of the opinion that in accepting this note and relinquishing the remainder of money due· to the defendant, the plaintiff did waive its asserted right to retain the money and apply the same on the indebtedness, and in doing so waived any claim to this particular fund, all of which we think constituted a sufficient consideration for the execution of the note by the defendant. It makes no difference that the defendant executed the note under protest. See, in this connection, *Glaze* v. *W. & A. R. Co.,* 67 *Ga.* 761. "'Where parties have conflicting claims, depending upon a law point, and they compromise them, each is bound by the settlement, whether the law point turns out to have been for him or against him.' *Morris* v. *Munroe,* 30 *Ga.* 630. . . 'Moreover, in order to render valid the compromise of a claim, it is not essential that the matter should be really in doubt. It is sufficient if the parties consider it so far doubtful as to make it the subject of a compromise.' 6 Am. & Eng. Enc. L. (2d ed.) 713, and cases cited." *City Electric Ry. Co.* v. *Floyd County,* 115 *Ga.* 655, 657 (42 S. E. 45). While it is true that the contentions of the plaintiff must be made in good faith, and that as a general rule such question is for determination by the jury (*Dickerson* v. *Dickerson,* 19 *Ga. App.* 269, 91 S. E. 346), yet since in the present case the defendant admitted a prima facie case, and there was no evidence introduced to show that such contentions were not made in good faith, and since the other facts appeared without dispute, the trial judge did not err in directing a verdict for the plaintiff.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*