### 29939. WOLFE *v.* BREMAN.

814

DECIDED JULY 5, 1943.
ADHERED TO ON REHEARING, JULY 31, 1943.

816

*A. S. Grove,* for plaintiff.

*MacDougald, Troutman & Arkwright, William H. Schroder,* for defendant.

MacIntyre, J. ■ The defendant contends that there was no

consideration for his agreement to pay the plaintiff the $600 in question. "Slight consideration is sufficient to sustain a contract, and courts of law will not look closely into its adequacy. Forbearance to prosecute a legal claim, and the compromise of a doubtful right, are both sufficient considerations to support a contract." *Austell* v. *Rice,* 5 *Ga.* 472 (2) (3). It is not essential that the person to whom the consideration moves should be benefited, provided the person from whom it moves is in a legal sense injured. The injuries may consist of a compromise of a disputed claim which is not necessarily a valid claim, but a compromise of a bona fide controversy (the good faith is generally a question for the jury), or forbearance to exercise a legal right; the alteration in position being regarded as a detriment that forms a consideration independent of the actual value of the right forborne. *Hume* v. *Davison-Paxon Co.,* 57 *Ga. App.* 289, 292 (195 S. E. 318). The widow, Mrs. Breman, alleges that the final settlement and compromise by which she withdrew her objections in her intervention, in which she contended that the annuity during her life, or so long as she remained a widow, was not in compliance with her husband's will that she was to have "installments arising from the conversion of $30,000 of life insurance into 20 installments certain," was done at the request of the defendant, and that she did not seek to have the executors purchase the annuity in the Mutual Life Insurance Company of New York, which she was very anxious for them to do because she had been associated with that company for over 16 years; that she did not oppose the executors purchasing from the defendant, as agent of the Union Central Life Insurance Company, which was, in so far as she was concerned, an annuity during her life or so long as she remained a widow. All of which was done at the request of the defendant.

She further alleged that said annuity was accordingly purchased from the Union Central Life Insurance Company through the defendant's agency. The defendant acknowledged in writing his previous promise to pay petitioner $600. All of this together, we think, was a forbearance of a legal right by the widow, and constituted a consideration to support the promise by him to pay the $600. Rector &c. of St. Mark's Church *v.* Teed, 120 N. Y. 583 (24 N. E. 1014). The consideration consisted in the forbearance of the widow to exercise a legal right, or at least what she bona

fide believed to be a legal right, to insist that the executors purchase for her the "20 installments certain," as directed in her husband's will, and accept instead an annuity for life, or widowhood. And we might say that the alteration in position of the widow by accepting as a compromise said annuity having in effect been alleged as a detriment, would form a consideration independent of the actual value of the right forborne. Rector &c. *v.* Teed, supra. Whether the widow would have succeeded in the litigation by having her intervention sustained is not the test. It is enough that she yielded the right she had to contest the right to receive from her husband's estate "the 20 installments certain" as directed in his will. The consideration, even if it did not rest upon any advantage to the defendant, but only upon the abandonment by the widow of her position as a contestant, would nevertheless be sufficient, for she had relinquished what she bona fide believed to be a right secured to her by law, and she did so at the request of the defendant, who promised to pay her for it. We think there was a consideration for the defendant's promise to pay the $600.

■ The defendant contends that even if there was a consideration for the contract, the promise to pay was a rebate and was, therefore, not collectible under the law. The Code, § 56-218, provides: "No insurance company or insurance agent doing business in this State shall enter into any contract to rebate any insurance premium or any part thereof of any insured or other person." One who does so is guilty of a misdemeanor under the provision of the Code, § 56-9903. "In insurance rebates are deductions from stipulated premiums allowed in pursuance of antecedent contract." 36 Words & Phrases, 424. "Annuity has been defined in general terms as technically a yearly payment of a certain sum of money, granted another in fee for life or years, but in a broader sense as a fixed sum granted or bequeathed and payable periodically, but not necessarily annually, subject to such specific limitations as to duration as grantor or donor may lawfully impose. . . Insurance, as generally understood, is an agreement to indemnify against loss in case property is damaged or destroyed by fire, or to pay a specified sum upon the death of the insured or upon his reaching a certain age. An annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. The

consideration for an insurance contract is generally spoken of as a premium, which is payable annually, semi-annually, monthly, or weekly. The consideration for an annuity contract is not generally regarded as a premium, and is usually covered by a single payment." 3 Words & Phrases, 494. The creating of annuities by deed and will is of ancient origin. "The granting of annuities by corporations upon consideration paid is a more recent practice. It appears to have been engaged in first by insurance companies to which it is largely confined at the present day. It is essentially a form of investment, and uniformly held to be purely such, regardless of the fact that in its usual form payments are contingent upon continuity of the life of the grantee. In some forms of annuity, not even this contingency exists. The fact of the existence of such contingency is held not to bring it within the classification of insurance, which generally speaking, is indemnity for loss suffered from some risk. In a broad and general sense investment may be said to have the same objective. The uncertainties arising from a constantly changing business and economic world involve an infinite variety of risks, security or insurance from which men constantly seek through investment of various kinds. But this is not the character of insurance or risk which is connoted in the business of writing insurance policies. The terms have a more narrow and restricted meaning. For many years there has been an evergrowing tendency of life insurance companies to encroach upon the field of investment by loading their policies with an increasing variety of purely investment features. This fact, however, does not affect the character of a contract made by an insurance company as to whether it is insurance vel non, nor does it broaden the definition to include as insurance that which is not in fact properly so classified. An interesting and instructive discussion of this subject is found in Ellison v. Straw, 119 Wis. 502, 97 N. W. 168, 170. In that case the question was whether payments due the insured under a tontine policy were life insurance within the meaning of exemption of Wisconsin. We quote from the opinion: 'Life insurance is one thing, investment is another, but the ingenuity of the life insurance companies in formulating contracts which confuse the distinction has been active for generations. Pure life insurance has become rare, except with beneficial associations; but the gradations from that contract, with some

slight provision for accumulation of dividends, to contracts where the accumulation is the predominant, if not even the exclusive, purpose, are almost numberless. Life insurance is a promise to pay a certain sum upon the death of the assured. Tennes v. Ins. Co., 26 Minn. 271, 3 N. W. 346; Talcott v. Field, 34 Neb. 611, 52 N. W. 400; Shakman v. U. S. Credit System Co., 92 Wis. 366, 66 N. W. 528, 32 L. R. A. 383, 53 Am. St. Rep. 920. Doubtless the amount so payable may be augmented by accumulation of excessive premiums and their earnings in the hands of the company without destroying the essential character of the contract. When, however, we find, as frequently, a promise to repay a sum made up from a portion of the premiums and their earnings at a date certain in the lifetime of the assured, we have only a contract such as a savings bank may as well make.'" Daniel v. Life Insurance Co. (Tex. Civ. App.), 102 S. W. 2d, 256, 260. Thus, it seems to us, that an annuity contract may be granted by an insurance company or any other corporation or individual for a certain period. Carroll v. Equitable Life Assurance Society, 9 Fed. 2d, 223, 224. Generally speaking, life insurance is a provision for death, while an annuity is a provision for life. "The typical case of life insurance is found when a person insured pays annually during his life a stipulated sum to an insurer in consideration of which the insurer engages to pay on the death of the insured a lump sum to a beneficiary. The typical case of an annuity is found where a purchaser pays down a lump sum to a grantor, who engages himself to pay a beneficiary during life a stipulated sum annually." Daniel v. Life Insurance Co., 102 S. W. 256, 258, supra.

In the instant case the money collected by the executors from the insurance policy of the husband was converted into an investment commonly known as an annuity, payable in monthly installments so long as the widow lived or remained a widow. The insurance contract or policy was separate and distinct from the annuity contract. The mere fact that the will directed that the money obtained from the insurance policy was to be invested in an annuity did not so intermingle the two as to make it impossible to separate them or to make one indivisible contract. The insurance contract or policy and the annuity contract did not become component parts, which were so welded together by the will as to merge them into one whole indivisible contract, the nature of

which was an insurance contract or policy. Here the executors of the deceased husband and not the widow, were to pay for the annuity. The allegations of the petition do not show that the purchasers of the annuity, the executors, were to receive back any part of the lump sum paid by them for the annuity. The widow was paying nothing for the annuity, and the executors, so far as the petition shows, paid no regular premiums, but paid one single lump sum, and at no time received any deductions or "drawbacks" or "abatement" from the defendant as a rebate, or otherwise. We might call attention again to Daniel *v.* Life Insurance Co., supra, where it was said: "The consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment." Hence, we think that under the allegations of the petition, assuming them to be true as we must do on demurrer, the promise of the defendant to pay the widow $600 was enforceable; that it was based on a consideration, and was not a contract to rebate an insurance premium or any part thereof directly or indirectly at the instance or in behalf of the insurer, which is prohibited by statute in this State.

The judge did not err in overruling the demurrers to the petition.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON REHEARING.

MacIntyre, J. The petition shows that the husband died on November 27, 1940; that his will was probated in solemn form on January 18, 1941; that the annuity contract in question itself states that it "shall be deemed to be dated and to take effect March 19, 1941;" that it was "issued on March 26, 1941;" that the widow received the first monthly payment of the annuity on April 19, 1941; that this is the annuity the purchase of which the widow verbally agreed not to oppose; that on May 1, 1941, the defendant acknowledged his previous promise to pay under the verbal agreement and entered into a written agreement in the following language: "When the annuity No. 1365543 payable to Blanche Stegerman Breman is finally and fully approved by a satisfactory court order I agree to make her a payment of six hundred dollars as a settlement at rate of one hundred per month of any and all amounts I may be due her. Signed Nathan Wolfe;" that the executors of her husband's estate filed a petition asking the court's direction as

to the administration of the husband's estate under the will; that on May 8, 1941, just seven days after the defendant had promised to pay when the widow had finally and fully obtained a satisfactory court order approving the purchase of the annuity, the widow filed a cross-bill setting up her contention as to the proper administration of her husband's estate. And among the things mentioned in her cross-bill was her contention as to the annuity in question.

The petition as amended alleged, in part: "That, relying upon said promise to pay petitioner said sum of money, petitioner did not attempt to block, prevent, or in any manner interfere with the purchase of said annuity by the executors as was her right to do; nor did petitioner oppose the purchase of said annuity from the Union Central Life Insurance Company through defendant's agency, nor did she insist that such annuity be purchased from the Mutual Life Insurance Company of New York as was her foremost desire. That said annuity contract was finally and fully approved by a court order and decree signed in open court on March 30, 1942, by A. L. Etheridge, Judge of the Superior Court, Atlanta Circuit, the same being done at the instance of the executors of the estate of Max L. Breman and the same being in settlement of certain claims and misunderstandings between petitioner and said executors, in which decree the following language appears: 'It is found, considered, ordered, adjudged and decreed; (1) That the executors are authorized and empowered to make the compromise and settlement set forth by the amendment to their petition. (2) That said settlement and compromise has been agreed upon by the executors and the said Mrs. Blanche S. Breman and her counsel, subject to the approval of the court; and it is hereby approved.' The amendment referred to in said order and decree specifically referred to petitioner's contentions with reference to the purchase of said annuity by setting forth the following which is a verbatim quotation from said amendment: 'That since the original petition of the executors for direction was filed, Mrs. Blanche S. Breman, the widow of Max L. Breman, deceased, has filed an answer and cross-bill in said cause . . . Her contentions are more fully set out in the cross-bill which is a part of the record in this case.' Petitioner alleges that one of the principal issues raised in the cross-bill referred to in the above amendment was whether or not the executors were authorized to purchase the

annuity in question,. this issue being presented by petitioner's allegation in her cross-bill that '(10) Cross-petitioner is informed that the monthly payment of $137.60 is not the result of a conversion of $30,000 of insurance, but results from the purchase of an annuity. Cross-petitioner says that she is entitled to receive of the proceeds of said life insurance the amount that would yield the annual payment contemplated had $30,000 of the insurance been converted in accordance with Item 2 of the codicil.' In their answer to petitioner's cross-bill, the executors denied this allegation. Their answer, being a general denial, is on record in the superior court clerk's office. Petitioner further alleges that the final settlement and compromise of her claim against the executors included her oral assent to continue receiving and accepting the monthly payments of $137.60 resulting from the purchase of said annuity and that this, being a part of and included in the compromise and settlement, was therefore finally and fully approved of by the court order heretofore set forth. Petitioner shows further that she has been and still is, receiving and accepting said monthly payment of $137.60 and will continue to do so until her remarriage or death as provided for in said annuity, final settlement and compromise, and court order. Petitioner attaches hereto a copy of annuity No. 1365543 in response to defendant's special demurrers."

The widow expressly alleges in her answer that she did not object to the purchase of the annuity from the defendant by the executors, and that the petition shows that the purchase of the annuity was made prior to the time of the written acknowledgment of the verbal promise to pay, conditioned upon a valid order of the court approving the form of purchase, and that there was an order or judgment by the judge of the superior court approving the settlement of all the differences between the widow and the executors. and among the things approved, which was a part of this settlement, was the purchase of the annuity in question. In short, the petition in effect alleges that the executors purchased the annuity in question, and that before the defendant would pay, as promised, he wanted an order of the court approving and making valid the purchase of the annuity already made. It seems to us that the method the widow adopted in order to obtain a valid court order, as provided in the written acknowledgment of the promise to pay,

was of no fatal concern to the defendant, provided such method was not an improper one. And the method she adopted of settling all disputes between herself and the executors under her husband's will was, so far as we are now concerned, a proper one, for it was approved by the judgment of the court, and that judgment is not now attacked. The fact that in her cross-bill she made various contentions as to what were her rights under her husband's will, one of which was that the will provided for a purchase of "20 installments certain," and not for a purchase of an annuity during her life or widowhood, did not destroy her right to recover under the defendant's promise to pay, even if there were contentions between her and the executors, and their contentions as to the annuity were intertwined with other contentions and the other contentions were intertwined with each other. Nevertheless there finally came forth from the petition for direction by the executors and the cross-bill by the widow an order of the court in effect approving the annuity as provided in the defendant's written acknowledgment of his promise to pay. Of course, if the evidence and the pleadings show that the consideration failed in whole or in part, the jury may so find.

The petition as amended, in addition to the parts of the will and court decree, which were set out in the petition, as hereinbefore stated, alleged that the will and decree were on file in certain named courts in Fulton County, Georgia, where the case was to be tried, and that the original or a certified copy would be produced upon the trial of the case, and presented from time to time, as it became necessary to inquire therein or refer thereto. The suit is based on a promise to pay, and is not brought on the judgment of the court or the will, and while such parts of each of them as are relevant may be introduced as evidence, yet the law does not require the plaintiff to spread out her evidence in her petition. We think the petition plainly, fully, and distinctly sets forth a cause of action. Code, § 81-101.

This and all other matters in the motion for rehearing having been considered, our

*Judgment is adhered to. Broyles, C. J., and Gardner, J., concur.*