### 43149. TENNESSEE-VIRGINIA CONSTRUCTION COMPANY v. WILLINGHAM.

WHITMAN, Judge. C. B. Willingham, d/b/a Willingham Machinery Co., initiated this action in the Civil and Criminal Court of Cobb County by attachment, swearing in his affidavit that defendant, the Tennessee-Virginia Construction Co., was indebted to him in the amount of $2,890. Pursuant to this action, a deputy sheriff of Cobb County returned a levy stating therein that he had levied upon certain property of the defendant. Thereafter, plaintiff filed his declaration in attachment and notified defendant. Defendant then interposed a traverse to the sheriff's return and a plea to the jurisdiction. After hearing evidence without a jury the trial court entered an order finding against both the traverse and the plea to the jurisdiction. Defendant appeals from this order. *Held:*

1. The errors enumerated by the appellant are that both its traverse and its plea to the jurisdiction should have been sustained for the reasons that (1) the evidence shows that the sheriff's attempt to levy was so defective as to be fatal and (2) that the property levied on was not the appellant's property.

For clarity we shall hereafter refer to the appellant as "Tennessee" and the appellee as "Willingham."

The property involved in the levy is an Allis-Chalmers tractor which, according to the evidence, was sold by Willingham to

Tennessee. William Conley, president of Tennessee, testified that the Allis-Chalmers tractor was received in December of 1964, and a Caterpillar tractor was delivered to Willingham, in accordance with their sale contract, as a trade-in. He also testified that the Allis-Chalmers tractor was "unsatisfactory" and was returned in either February or March of 1965, and that he had since seen both the Allis-Chalmers and the Caterpillar machines on Willingham's property.

With regard to ownership of the Allis-Chalmers tractor at the time of the levy, Tennessee takes the position in its brief that it had the right under the Uniform Commercial Code to inspect the machine and reject it within a reasonable time after delivery and that it did so, citing *Code Ann.* § 109A-2—401 (Ga. L. 1962, pp. 156, 200), § 109A-2—513 (Ga. L. 1962, pp. 156, 210), § 109A-2—601 (Ga. L. 1962, pp. 156, 212), and § 109A-2—602 (Ga. L. 1962, pp. 156, 213).

We are concerned here with who had title to the machine. *Code Ann.* § 109A-2—401 (Ga. L. 1962, pp. 156, 200) states in Subsection (2) that: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods. . ." (This same principle obtains at common law. *Toole v. Davis,* 13 Ga. App. 122 (3) (78 SE 865)). But Subsection (4) provides that: "A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller."

The court is of the view that Subsection (4) has relation to an election a buyer may make *at the time* the goods are presented to him for delivery. If the buyer *at that time* rejects or refuses to receive them (in delivery) or to retain them (for some purpose such as conducting a conformity inspection), whether justified or not, then title revests in the seller and the seller is relegated to the various remedies provided in the Commercial Code, e.g., § 109A-2—708 (Ga. L. 1962, pp. 156, 227). Or even if the buyer has accepted delivery or conditionally received the goods for some purpose he may thereafter revoke his acceptance and revest title in the seller *provided* his revocation is *"justified."*

In the present case, there was no rejection or refusal to receive or retain the machine when it was delivered. The evidence was that Tennessee did nothing *at the time of delivery* which

could be construed as revesting title to the machine in Willingham; rather it received and retained the machine for two or three months. One receives goods when he takes physical possession of them. *Code Ann.* § 109A-2—103 (c) (Ga. L. 1962, pp. 156, 171).

However, as discussed above, a buyer may, even after he has accepted, revest title in the seller by revoking his acceptance *provided* his revocation is *justified.* The question of whether a revocation of acceptance is justified will ordinarily be a question of fact. In the present case, the burden was upon Tennessee to justify its revocation. The only evidence presented in this regard by Tennessee was that the machine was "unsatisfactory."

The trial court sitting without a jury heard this evidence and ruled against Tennessee, finding in effect that Tennessee's revocation of acceptance was not justified and had not operated to revest title in Willingham. "Unsatisfactory" can refer to anything from color to performance. The net effect of the evidence and the trial court's finding was that Tennessee had title to the machine and that the contention in the traverse and plea to the jurisdiction that Tennessee did not own the property levied on was without merit. We agree with the trial court.

*Code Ann.* §§ 109A-2—513, 109A-2—601 and 109A-2—602, supra, relied on by Tennessee are respectively concerned with the particular rights of a buyer to inspect goods; when he may properly reject or refuse to receive goods at the time of delivery, and the manner and effect of a rightful rejection thereafter. These sections may well have an indirect effect on the determination of where title lies in a particular case, but have not been shown to have such an effect in this case.

2. With regard to the manner in which the sheriff levied on the machine, N. E. Mitchell, the levying officer, testified that he went to Willingham's place of business and asked Willingham where the piece of machinery was located and Willingham pointed it out to him across the field saying: "That's it right out there." Mitchell testified that he took down no serial numbers but said: "I did ask him if he wanted it stored somewhere else if he didn't want it stored there. But he said he wanted it stored there. And I told him if the secretary would notify him of the sale day, to have it in front of the court or if he wanted to have his attorney to draw up a quick order

sale, it was his right when it came time, and it could be sold on the premises but it had to be a sign on it. And I wanted him to know that."

Thereafter, Mitchell testified that he was asked to amend the entry of levy which he did by striking the words "One Caterpillar Model 933" and substituting in lieu thereof "One Allis-Chalmers HD 11 Front End Loader"; that when the amendment was presented to him he went back for a second time for a look, and the same piece of machinery was still there and hadn't been moved. Mitchell further testified that a photograph shown him at the hearing was a photograph of the machine involved which had been pointed out to him originally when he levied and which was still there when he went out the second time. The photograph was made by Willingham and was identified by him as showing a machine identical in description and serial number with that described in the amended levy. Willingham further testified that it was a photograph of the machine he originally pointed out to the levying officer.

The levy was not defective because it required amendment. "[T]he levying officer shall have the right to amend his return by supplying any omissions or errors, and the court before which the attachment shall be returned shall have power to order said amendments." *Code* § 8-610. "The provisions of this Code section are remedial in their nature, and therefore are to be liberally construed. . . Consequently, where the court actually acquired jurisdiction in an attachment proceeding against a nonresident by the levy of an attachment upon the property of the defendant, with notice of the levy given to the defendant, it was not error, at the trial term, to permit the officer to amend his entry and return of the levy so as to show the defendant's interest in the property levied upon." *Hendricks v. Ga. Fertilizer Co.,* 40 Ga. App. 427, 428 (149 SE 711).

Tennessee also takes the position that the levying officer did not get control of the machine, making the levy fatally defective, and cites *Jones v. Howard,* 99 Ga. 451 (27 SE 765), holding that seizure, either actual or constructive, is absolutely indispensable to the completion of a levy. We find that Mitchell sufficiently seized the property. As was said in *Moore v. Brown &c. Furniture Co.,* 107 Ga. 139, 144 (32 SE 835), quoting from *Roebuck v. Thornton,* 19 Ga. 149, and *Sheffield v.*

*Key,* 14 Ga. 528: "What is the essence of a levy? It is the sheriff's getting power over the property—such power as will enable him to sell it at the proper time and place. This he gets whenever he gets the property into his own hands, or into the hands of another as his agent. There is no law saying that the defendant in fi. fa. shall not be this agent. That this is the essence of a levy, is, it seems to me, admitted, when it is admitted, as it is in many American cases, that a levy is good if the sheriff sees the property, although he does not touch it. . . We would not be understood as holding that an absolute manucaption was necessary; but there should have been some sort of custody and control which would have served to designate the extent of the intention to seize and take possession, and definitely have marked the bounds of the sheriff's qualified property in the subject of levy. And the entry on the fi. fa. should have corresponded."

In the present case Mitchell had the property under his control through Willingham as his agent and the levy was not defective for this reason.

3. This court, on its own motion, has inquired into the jurisdiction of the court below as to subject matter in view of *Code Ann.* § 8-117, as amended (Ga. L. 1962, pp. 520, 521), which provides that, in attachment cases, when the principal amount sworn to exceeds $200, and in any case where the defendant is a nonresident (both conditions are present in the case sub judice), the attachment shall be *returnable* to any appropriate *superior* court. The Civil and Criminal Court of Cobb County was created with a jurisdiction in many instances concurrent with the superior courts (Ga. L. 1964, p. 3211, amended, Ga. L. 1965, p. 3313). In *Carroll & Downs v. Groover,* 27 Ga. App. 747, 749 (110 SE 30), the court held that the City Court of Hinesville created by statute having jurisdiction to "try and dispose of all cases of whatever nature, except those cases over which exclusive jurisdiction is vested in other courts by the Constitution of Georgia" (Ga. L. 1916, p. 232) had jurisdiction over an attachment proceeding against a nonresident even though the attachment statute provided that the attachment was returnable to the superior court. That case is controlling here. See also *Howard Supply Co. v. Bunn,* 127 Ga. 663 (56 SE 757).

*Judgment affirmed. Bell, P. J., and Pannell, J., concur.*

ARGUED OCTOBER 4, 1967—DECIDED FEBRUARY 9, 1968—
REHEARING DENIED FEBRUARY 23, 1968.

*Gettle & Jones, Donald W. Gettle, John J. Jones, Taylor & Templeton, M. C. Ball,* for appellant.

*Gambrell & Mobley, Albert Sidney Johnson,* for appellee.