## 48288. GIANT PEANUT & GRAIN COMPANY, INC. v. LONG MANUFACTURING COMPANY, INC.

Hall, Presiding Judge. Giant Peanut & Grain Co., Inc., ("Giant") executed a dealership contract with Long Manufacturing Co., Inc. ("Long") contemplating distribution by Giant of Long's machinery and involving retention by Long of a security interest in these products. Paragraph B of the security provisions required that prior to a bona fide sale by the dealer (Giant) the equipment should be kept only in certain specified locations. Though counsel for Long ably argues that the contract required that all modifications of it be in writing, we find no such requirement in the contract generally or in paragraph 1, which is particularly urged by counsel.

Subsequently, some 11 Long peanut wagons came into the hands of Giant, though the parties are in disagreement as to the exact understanding pursuant to which this occurred. Giant admitted that it allowed numerous of these wagons to be employed in the

fields of farmers, which we note would constitute a violation of Paragraph B of the security agreement if the same were controlling. Taking the position that the 11 peanut wagons were transferred to Giant under the dealership agreement, and that Paragraph B was not complied with, Long considered the contract in default and instituted foreclosure proceedings under Code § 67-701 to enforce its security interest.

Giant responded by filing an affidavit of illegality and forthcoming bond in the foreclosure, as allowed by Code § 67-801, alleging as a defense that an agreement had been reached by the parties to terminate the dealership contract with an attendant settlement of their accounts. Essentially, the affidavit alleged an agreement that Giant could return and recover full credit for two Long tractors as well as other items, and this credit would be applied to the unpaid portion of Giant's debt on the peanut wagons. Also a claim for some $5,000 "warranty work" was alleged by Giant to be owed by Long. The affidavit alleged that Long had partly performed according to this understanding but had failed to honor the portion of the contract concerning the tractors. In conclusion, it alleged that Giant was not indebted to Long, but that Long was indebted to Giant in the amount of $8,527.22.

Long moved for and was granted summary judgment on grounds, among others, that there was no genuine issue of any material fact and no legal defense to the foreclosure affidavit and fi. fa. issued thereon. Giant appeals.

The parties here raise numerous issues concerning the course of their transactions. However, because we reverse the grant by the trial judge of summary judgment for Long on the ground set out below, it is unnecessary for us to consider the merits of the other opposing contentions of the parties, which may be explored at trial and weighed by the trier of fact.

Contrary to Long's argument on appeal, we find no provision in the dealership contract, nor do we find special circumstances, which would prohibit the operation of the general rule that parties to a written contract may modify that contract or make a subsequent contract by parol. *P. & O. Machine Works, Inc. v. Pollard,* 115 Ga. App. 96 (153 SE2d 631); *Evans v. Henson,* 73 Ga. App. 494 (37 SE2d 164). Long apparently denies that there was any oral agreement at all under which it obligated itself to take back the tractors and apply that credit to the amount due on the peanut wagons. However, Billy Walker, President of Giant, on his deposition testified that he had reached such an agreement

with a man named Bull, a representative of Long in some capacity, and that the oral agreement between them was witnessed by at least four named witnesses and perhaps others as well. The record is devoid of indications of the actual status of Bull as an officer or non-officer of Long. The initial contract between the parties provided that only an officer of Long had authority to vary, add to, or change any of the terms of the contract. Without reaching the question whether only an officer of Long had authority to agree with Giant to cancel the old contract and reach an oral settlement agreement, we note that in support of its motion for summary judgment Long had the burden of showing Bull's lack of capacity to enter into the contract as alleged by Giant, and Long has failed to carry this burden.

The new oral agreement sought to be established by Giant must itself be supported by consideration; however, consideration may be found by the trier of fact from numerous circumstances present in or suggested by the record and capable of development at trial. If Giant's return of the tractors constituted a forbearance to press legal claims against Long for equipment defects, this forbearance could constitute consideration for Long's promise to give credit to be applied toward payment due on the peanut wagons. *Wolfe v. Breman,* 69 Ga. App. 813 (26 SE2d 633). A contract compromising doubtful issues between the parties is supported by consideration. *Hume v. Davison-Paxon Co.,* 57 Ga. App. 289 (195 SE 318). Where mutual promises are given, each promise is itself consideration for the return promise. Code § 20-304; *Benton v. Roberts,* 41 Ga. App. 189 (152 SE 141). See *DeKalb County v. Georgia Paperstock Co., Inc.,* 226 Ga. 369 (174 SE2d 884) (contract to sell boxes); *Webb v. Smith,* 220 Ga. 809 (141 SE2d 899) (mutual wills); *Chandler v. Griffin,* 132 Ga. 847 (65 SE 128) (mutual releases). This enumeration of possibilities is not intended to be comprehensive; it merely indicates that at trial of this action consideration may be proved as an element of the alleged new oral contract, the remaining elements of which also, of course, remain to be proved. We rule only that a substantial issue remains regarding whether there was such an oral agreement.

Consistent with Giant's position on this alleged oral agreement, its response to the foreclosure affidavit is properly regarded as a plea in recoupment which is allowable in an affidavit of illegality, rather than a plea of set-off, which is not. *Arnold v.*

*Carter,* 125 Ga. 319 (54 SE 177); *Futch v. Taylor,* 22 Ga. App. 441 (96 SE 183).

We find that the conflicting contentions of the parties create an issue of fact concerning whether the dealership contract was modified or succeeded by an oral agreement requiring Long to take back the tractors and apply the credit for them to the unpaid amount due on the peanut wagons. The existence of such an agreement would, of course, render the foreclosure affidavit void because it would in those circumstances not be based upon the operative contract between the parties but on its predecessor; and because an issue of fact remains on this point the trial court erred in dismissing the affidavit of illegality and granting summary judgment for Long.

We are not dissuaded from this view by a possible problem posed by Long, which is that through a subsequent sale of the tractors by Giant to retail purchasers, in transactions which were financed by third parties, the third parties have acquired a lien on the tractors and it is therefore unreasonable to expect Long to take them back and give credit to Giant. Giant alleges that Long at the time of making the oral agreement was aware of the existence of the lienholders, and the implication, which, as with all implications on summary judgment, we should construe most favorably to Giant, is that the arrangement was to be worked out to the satisfaction of all involved parties. This was a settlement agreement under which Giant undertook merely to return unsatisfactory goods for credit. It was not a "sale" in the making of which Giant was obliged to have good title.

Nor are we persuaded that this was a "sale" that would invoke the statute of frauds, Code Ann. § 109A-2—201, and require that the settlement agreement itself would have to be evidenced by some writing. Under Code Ann. § 109A-2—401 (4) this was a mere revesting of title in the seller by operation of law, and not a sale.

In *Tenn.-Va. Const. Co. v. Willingham,* 117 Ga. App. 290 (160 SE2d 444), this court considered Code Ann. § 109A-2—401 (4), and ruled that even after the original acceptance of goods by buyer, buyer may subsequently revest title in the seller by revoking the acceptance, provided such revocation is justified. Id. at p. 292. In that case, we considered facts on which the buyer attempted to revoke acceptance of a tractor some two or three months after acceptance, on the bare allegation that the tractor was "unsatisfactory." We ruled there that buyer had failed to carry his burden of justifying the revocation, and therefore title had not

revested in the seller.

Thus, in *Tennessee-Virginia,* we recognized that a *justified* revocation even after some months would revest title in seller under the provisions of Code Ann. § 109A-2—401 (4), which further states that such revesting is not a "sale." See 2 Anderson, Uniform Commercial Code, § 2-401; 17 (2d Ed. 1971). The present case differs in crucial fashion from *Tennessee-Virginia* in that here buyer, Giant, has no burden of justifying revocation because it alleges that the parties *agreed* upon the revocation and the return of the items to Long. This alleged agreement by Long, providing, of course, that the agreement itself be later proved, had itself the effect of justifying the revocation, and therefore under the position taken here by Giant the return of goods would not be a sale and would not be required by the statute of frauds to be in writing. There is thus no legal impediment to Giant's factual claim that such an agreement existed and should be enforced; and Giant is entitled to a trial on the issue presented.

For the foregoing reasons, the trial judge erred in granting summary judgment for Long.

*Judgment reversed. Clark, J., concurs. Evans, J., concurs specially.*
ARGUED JULY 9, 1973 — DECIDED SEPTEMBER 19, 1973.

*Rembert C. Cravey,* for appellant.
*Kelley & Allen, Roy Benton Allen,* for appellee.

EVANS, Judge, concurring specially. A very close question is presented as to whether the "new oral agreement" referred to in the majority opinion is binding on the Long Corporation. The original written contract between the parties provides: ". . . that an *officer of the company* has any authority to in any manner vary, add to, or change any of the terms hereof, or to make any representation of any kind not set forth in this agreement." (Emphasis supplied.) The new oral agreement was made between a representative of the Giant Corporation and a representative of the Long Corporation, whose last name was "Bull." Was it shown that Bull was an *officer* of the Long Corporation, and thus one who was authorized to agree to "vary, add to, or change any of the terms" of the original written agreement? The only testimony suggesting Bull was an officer of the Long Corporation is as follows: 1. "In other words, all of them talked like that Bull is the bull." (Tr. 62) 2. "And that's all I know—Bull. And they talked like that Bull is — when he speaks, he is the bull, is all I know." (Tr. 63) While this would generally be termed unsatisfactory evidence to

prove that Bull was an officer of the Long Corporation, in motions for summary judgment all inferences and presumptions must be construed most favorably towards the party opposing the motion. *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408). And under such construction this testimony barely, and only barely, suggests that Bull was an officer of the Long Corporation.